[No. S133114. Nov. 27, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY ROGERS KELLY, Defendant and Appellant.

## COUNSEL

J. Courtney Shevelson, under appointment by the Supreme Court, and Thea Greenhalgh, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Manuel M. Medeiros, State Solicitor General, Donald E. de Nicola, Deputy State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Eric D. Share and Kelly M. Croxton, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—Article VI, section 14, of the California Constitution provides that "[d]ecisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated." In this case, we consider what this constitutional mandate requires in a criminal appeal in which defense counsel files a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071] (*Wende*), raising no issue for the appellate court's review, the defendant files supplemental arguments, and the appellate court identifies no arguable issue.

We conclude that a decision affirming the judgment in a *Wende* appeal disposes of a cause within the meaning of article VI, section 14, of the California Constitution, and therefore must be in writing with reasons stated.

Because the defendant in a *Wende* appeal has a right to file supplemental contentions, the Court of Appeal must consider these contentions in the course of disposing of the cause. Therefore, to comply with the constitutional mandate, the opinion must reflect the defendant's contentions and the reasons that they fail. We further conclude that, in light of *Wende*'s requirement that Courts of Appeal review the entire record, significant efficiency in the processing of subsequent proceedings, including future habeas corpus proceedings, can be achieved if the Courts of Appeal include in their *Wende* opinions a brief description of the facts and procedural history of the case, the crimes of which the defendant was convicted, and the punishment imposed. Therefore, in the exercise of our supervisory power over the courts of this state, we direct the Courts of Appeal to include this information in their opinions in *Wende* appeals. Finally, we encourage the Courts of Appeal to include in their *Wende* opinions any other information from the record that they anticipate will be relevant in further challenges to the judgment.

The Court of Appeal's opinion in the present case does not satisfy the constitutional requirement of a decision in writing with reasons stated. Rather than reversing the judgment and remanding the matter to that court, however, we have undertaken a review of the record and affirm the judgment, with reasons stated.

## I.

The facts of the underlying case are fairly straightforward. On July 21, 2003, an off-duty San Jose police officer witnessed defendant driving a vehicle in a reckless and erratic manner. The officer followed defendant and called for backup assistance. A uniformed officer arrived just as defendant parked his car. Defendant resisted the two officers and was handcuffed. After refusing to breathe into a preliminary alcohol-screening device, he was transported to the police department's alcohol investigation bureau, where he declined tests of his blood, breath, or urine.

At trial, the two police officers testified concerning defendant's conduct and appearance, and an expert testified regarding the effects of alcohol on the human body. In addition, the parties stipulated that defendant had suffered a felony conviction in December 1996 for driving under the influence of an alcoholic beverage in violation of Vehicle Code section 23152. The jury found defendant guilty of one felony count of driving under the influence of alcohol after having been convicted of a felony within 10 years (Veh. Code, §§ 23152, 23550.5, subd. (a)) and one misdemeanor count of resisting, delaying, or obstructing an officer (Pen. Code, § 148, subd. (a)(1)). The trial court imposed the midterm sentence of two years' imprisonment for the felony, and a six-month term for the misdemeanor, to be served concurrently with the felony sentence.

Defendant filed a timely notice of appeal, and the Court of Appeal appointed counsel to represent him. Appointed counsel, having found no arguable issue in his own review of the record, filed a brief pursuant to *Wende, supra*, 25 Cal.3d 436, setting forth the facts of the case and requesting that the appellate court review the entire record on appeal. The brief indicated that counsel would provide further briefing if requested by the court, but raised no specific issue. Both counsel and the Court of Appeal advised defendant of his right to file a supplemental brief to bring to the court's attention any issue he believed deserved review. Defendant filed a letter in the Court of Appeal setting forth 15 points for the court's consideration.

We set forth in its entirety the opinion rendered by the Court of Appeal:

"Following a jury trial, defendant was found guilty of one felony count of driving under the influence of alcohol with a felony prior within 10 years [citations; fn. omitted], and one misdemeanor count of resisting, delaying, or obstructing an officer [citation]. As to count one, the jury found true the allegation that defendant willfully refused a peace officer's request to submit to chemical test pursuant to [various Veh. Code sections].

"We appointed counsel to represent defendant in this court. Counsel filed an opening brief that stated the case and the facts, but raised no specific issues. Defense counsel requested we review the record pursuant to *People v. Wende*[, *supra*,] 25 Cal.3d 436.

"We notified defendant of his right to submit written argument on his own behalf within 30 days. We have read and considered defendant's written argument.

"Pursuant to *People v. Wende, supra*, 25 Cal.3d 436, we have reviewed the entire record and have concluded that there are no arguable issues on appeal.

*"Disposition*

"The judgment is affirmed."

Defendant then filed, in propria persona, a petition in this court seeking review of the judgment rendered by the Court of Appeal, based on its failure to address the contentions set forth in his supplemental brief. We granted defendant's petition, appointed new counsel to represent him, and limited briefing and argument to the issue of what is required of the Court of Appeal in this context under article VI, section 14, of the California Constitution.

## II.

In order to construe present article VI, section 14, of the California Constitution, we first review the history of that provision. The California Constitution of 1849 established a Supreme Court consisting of a Chief Justice and two associate justices, and granted the court appellate jurisdiction in a variety of cases. (Cal. Const. of 1849, art. VI, §§ 1, 2, 4.) Amendments to the Constitution in 1862 expanded the court's membership to include a Chief Justice and four associate justices, and described a wider range of cases in which the court had appellate jurisdiction. (*Id.*, art. VI, §§ 2, 4, as amended 1862.) As amended, the Constitution continued to require the Legislature to provide for publication of the court's decisions as the Legislature deemed expedient (*id.*, art. VI, § 12), but did not impose any requirement upon the court to provide reasons for its decisions.

In 1854, the Legislature enacted a statute requiring that "[a]ll decisions given upon an appeal in any appella[te] Court of this State, shall be given in writing, with the reason therefor, and filed with the Clerk of the Court." (Stats. 1854, ch. 54, § 69, p. 72.) This court held in *Houston v. Williams* (1859) 13 Cal. 24 (*Houston*) that the Legislature was without authority to require the judicial branch to provide reasons for its decisions in written opinions. "The Legislature can no more require this Court to state the reasons of its decisions, than this Court can require, for the validity of the statutes, that the Legislature shall accompany them with the reasons for their enactment. The principles of law settled are to be extracted from the records of the cases in which the decisions are rendered. The reports are full of adjudged cases, in which opinions were never delivered. The facts are stated by the Reporter, with the points arising thereon, and are followed by the judgments rendered, and yet no one ever doubted that the Courts, in the instances mentioned, were discharging their entire constitutional obligations. [Citations.]" (*Id.* at p. 25.)

The decision in *Houston, supra*, 13 Cal. 24, acknowledged that the reasons underlying the court's judgments are "of great importance in the information they impart as to the principles of law which govern the Court, and should guide litigants." (*Id.* at p. 26.) It added that "right-minded Judges, in important cases—when the pressure of other business will permit—will give such opinions. It is not every case, however, which will justify the expenditure of time necessary to write an opinion. Many cases involve no new principles, and are appealed only for delay. It can serve no purpose of public good to repeat elementary principles of law which have never been questioned for centuries." (*Ibid.*)

By the time the state's second constitutional convention was convened in 1878, the Supreme Court's workload was overwhelming. There was no

provision in either the original 1849 Constitution or the amendments of 1862 for intermediate courts of appeal—all appeals from the "district courts," as the trial courts of general jurisdiction were called, went directly to the Supreme Court. During the four years preceding the constitutional convention of 1878–1879, the court had elected not to provide a written opinion in nearly one-quarter of the more than 2,200 cases it decided. (2 Willis & Stockton, Debates and Proceedings, Cal. Const. Convention 1878–1879, p. 950 (Willis and Stockton).)

Although the court's decision in *Houston* asserted that no court with "the least respect for its own dignity and independence" could acknowledge a legislative power to require written reasons for the court's opinion (*Houston, supra,* 13 Cal. at p. 25), the delegates to the 1878–1879 constitutional convention concluded that such a requirement should be imposed by the Constitution itself. The convention's committee on judiciary and judicial department (Committee) proposed changes to address both the court's burgeoning caseload and its practice of deciding cases without written opinion. With some modifications, the Committee's proposals thereafter were adopted by the delegates and subsequently by the electorate as part of article VI of the Constitution of 1879.

In order to increase the court's capacity to decide cases, the Committee proposed a seven-member court with two departments, each comprised of three associate justices. (1 Willis & Stockton, *supra,* at p. 392.) Under the proposal, each department would have "the power to hear and determine causes and all questions arising therein, subject to the provisions hereinafter contained in relation to the Court in bank." (*Ibid.*) That same provision specified that the presence of three justices would be required "to transact any business in either of the departments, except such as may be done at chambers, and the concurrence of three Justices shall be necessary to pronounce a judgment. The Chief Justice shall apportion the business to the departments, and may, in his discretion, order any cause pending before the Court to be heard and decided by the Court in bank." (*Ibid.*) Finally, the proposed new article VI also included a provision concerning the court's opinions: "In the determination of causes, all decisions of the Court in bank or in departments shall be given in writing, and the grounds of the decision shall be stated." (1 Willis & Stockton, *supra,* at p. 392.)

At the constitutional convention at which these new provisions were proposed, Delegate Samuel Wilson spoke concerning "the reasons which have impelled the majority of the Committee on Judiciary to recommend section two for adoption by the Convention as the new judicial system, as far as the Supreme Court is concerned." (2 Willis & Stockton, *supra,* at p. 950.) He explained that the five-member court "has been unable to fully dispatch

the business before it." (*Ibid.*) He noted that the court had decided 2,242 cases during the preceding four years, "[b]ut in order to enable the Court to accomplish that work, it had to decide five hundred and fifty-nine cases without giving any opinion in writing. If it is proper and right that a Court of last resort should deliver opinions in writing, giving the reasons for its decisions, we have it demonstrated that the Court, as heretofore constituted and organized, could not possibly perform its duties, for it could not have rendered that number of decisions and have delivered written opinions upon them. The importance of requiring the Court to give written opinions cannot be overrated. They not only become the settled law of the State, and are precedents for subsequent cases, but in many causes where the litigation is not ended by the decision of the Supreme Court, and new trials are consequent upon a reversal, the decision of the Supreme Court should be given in writing, and reasons assigned, for they are instructions to the Court below, and are the controlling rule in the subsequent litigation." (*Ibid.*)

Delegate Wilson continued: "Any gentleman who has practiced in the Supreme Court knows that cases have been sent back for new trial, without written opinions, and the Courts below have been unable to ascertain the full views of the appellate Court upon the case. Four or five points may be presented. The Supreme Court may reverse the case and send it back for a new trial upon some one of these points, but upon which point the lawyers are unable to say—whether on five points or on one. The result is that the new trial in the Court below takes place without any light from above, and the case may be appealed a second time, and again reversed upon some one of the same points, and so, ad infinitum; whereas, if a written opinion were rendered, it might end the case without a second appeal. That practice shows the inefficiency of any system where written opinions are not required, and everywhere throughout the United States the Courts are required to deliver written opinions, stating the grounds of the decision, as we have provided in this section. Undoubtedly it will insure a careful examination of the cases, and result in well considered opinions, because they must come before the jurists of the country and be subjected to the severest criticism. I think every lawyer will agree with me, that in every case there should be an opinion in writing. It tends to purity and honesty in the administration of justice." (2 Willis & Stockton, *supra*, at p. 951.)

Mr. Wilson reiterated that the recommended appellate system would "enable the Court to . . . write opinions on all of the cases," but acknowledged: "Of course, there will always be some cases disposed of without written opinions. Sometimes a case goes off on some formal motion, or is dismissed on a technical question of practice. But I am speaking generally, of cases argued and submitted upon their merits, and there the decision is of little account as settling the law, unless the Court gives its reasons for the decision in writing." (2 Willis & Stockton, *supra*, at p. 951.)

Opposition to the Committee's proposal focused on the power that the restructuring of the court into two departments would give to the Chief Justice to control which justices decided particular cases. All competing proposals included the Committee's requirement that decisions be in writing with reasons stated, except one proposal that simply would have retained the existing provisions of the Constitution of 1849, as amended in 1862. No opposition to the requirement of a written opinion was expressed during the debates. (3 Willis & Stockton, *supra*, at pp. 1331–1333, 1447–1448, 1454–1457, 1499.) In responding to alternative proposals concerning the structure of the court, Mr. Wilson focused on the asserted "utter inability of the Supreme Court to decide the cases, and keep up with the calendar, and write opinions . . . ." (3 Willis & Stockton, *supra*, at p. 1455.)

In further support of his proposal, Delegate Wilson continued: "Now, everybody knows who has reflected at all upon this subject, or knows anything at all about it, that opinions must be written by a Court of last resort as matters of precedent. It is a very different thing from sitting down and saying that the judgment of the Court below is reversed or affirmed without giving any reasons, because when that is published, nobody knows whether that decision is right or wrong. But when the Judge has to sit down and write an opinion, or, in the language of this amendment reported by us, that they must give their opinion in writing, stating the grounds of the decision, then they are brought before the whole bar of the State, and they are bound to present themselves in a position where law and reason sustain the adjudication. Consequently it is the universal practice in the Courts of last resort in the States, and the Supreme Court of the United States, to render opinions addressing themselves to the intelligent judgment of the bar of the State or of the country, and of the Judges of the country." (3 Willis & Stockton, *supra*, at p. 1455.)

Delegate Clitus Barbour, whose competing proposal also would have required opinions in writing with reasons stated, offered the following comments in that respect: "Now, when we require them to state the reasons for a decision, we do not mean they shall write a hundred pages of detail. We [do] not mean that they shall include the small cases, and impose on the country all this fine judicial literature, for the Lord knows we have got enough of that already. To give us the reason for it does not take three lines. I maintain that there is hardly a single case, many points as may be made, that cannot be cleared up, and reasons given in five pages. Many of the decisions now in the reports contain thirty pages. Let them write short opinions in all cases, and I contend that it will not be difficult for them to write up all the decisions of the Court." (3 Willis & Stockton, *supra*, at pp. 1455–1456.)

Thereafter, article VI, section 2, was adopted by the constitutional convention delegates and subsequently approved by the electorate. It provided for

two departments within the Supreme Court, and required that "[i]n the determination of causes, all decisions of the Court in bank or in department shall be given in writing, and the grounds of the decision shall be stated." (Cal. Const., art. VI, § 2, as adopted 1879.)

Despite the efforts of the delegates to ease the burden on the Supreme Court by providing for decisions to be rendered by three-justice panels in departments, the court's workload and backlog increased in the ensuing two decades until finally, in 1903, the Legislature proposed a constitutional amendment to add an intermediate Court of Appeal comprised of three appellate districts, each with a three-justice District Court of Appeal. The proposal was approved by the voters in 1904, and included a provision that "[i]n the determination of causes, all decisions of the Supreme Court and of the District Courts of Appeal shall be given in writing, and the grounds of the decision shall be stated." (Cal. Const., former art. VI, § 24, as amended Nov. 8, 1904, repealed Nov. 8, 1966.)

As a result of the 1966 repeal and reenactment of article VI of the California Constitution, the requirement of opinions in writing is now found in article VI, section 14, and reads: "Decisions of the Supreme Court and courts of appeal that determine causes shall be in writing with reasons stated." There is no indication in the background materials prepared in the 1960's for the members of the California Constitution Revision Commission committee that was responsible for proposed revisions to article VI, or elsewhere, that any change in substance was intended with respect to the new wording of the "in writing" requirement.[1]

---

[1] Background materials prepared for members of the commission's committee on article VI stated that "the written opinion requirement . . . has received a narrow interpretation by the courts." (Background Study for Cal. Const. Revision Com., com. on art. VI, pt. 3 (Sept. 15, 1964) pp. 4–5.) None of the authority cited in support of this statement suggests that a written decision with reasons stated is not required in an appeal from a judgment of conviction filed in the Court of Appeal. (See *Funeral Dir. Assn. v. Bd. of Funeral Dirs.* (1943) 22 Cal.2d 104, 106 [136 P.2d 785] [summary denial of a writ petition does not determine a cause for purposes of the written opinion requirement]; *Oak Grove School Dist. v. City Title Ins. Co.* (1963) 217 Cal.App.2d 678, 694 [32 Cal.Rptr. 288] [only after alternative writ has been issued does matter become a "cause" requiring a written decision]; *People v. Brown* (1957) 149 Cal.App.2d 175, 176 [307 P.2d 949] [appellate court summarily denied motion to set aside conviction and summarily dismissed appeal from trial court's denial of similar motion; that petitioner filed a motion instead of a writ petition did not affect rule that denial of such relief need not be accompanied by a written opinion]; *People v. Alberts* (1956) 138 Cal.App.2d Supp. 909, 912 [292 P.2d 90] [written opinion requirement does not apply to appellate department of superior court]; *People v. Corlett* (1945) 67 Cal.App.2d 33, 59 [153 P.2d 964] ["We assume a court is not warranted in extending an opinion to undue length to specifically pass upon 94 separate assignments [of error in evidentiary rulings], none of which, upon examination, appears to have substantial merit"]; 31 Ops.Cal.Atty.Gen. 175 (1958) [no authority requires a court upon request of a defendant to state its reasons for increasing or decreasing bail once bail has been set].)

From this history, we discern a variety of purposes in the requirement that appellate decisions be in writing. Of course, some decisions establish precedent for future cases. Others provide guidance only to the parties and to the judiciary in subsequent litigation arising out of the same "cause." In all instances, the requirement of a written opinion promotes a careful examination of the facts and the legal issues, and a result supported by law and reason.

## III.

To evaluate the relevance and function of written decisions in the context of *Wende* appeals, we next review the constitutional underpinnings of the requirement of independent judicial review in such appeals, and the nature of the review required by *Wende*.

■ The federal Constitution does not require a state to afford appellate review of a judgment of conviction (*McKane v. Durston* (1894) 153 U.S. 684 [38 L.Ed. 867, 14 S.Ct. 913]), but every state has chosen to provide a right of appeal in criminal cases. (*In re Sade C.* (1996) 13 Cal.4th 952, 966 [55 Cal.Rptr.2d 771, 920 P.2d 716]; Pen. Code, § 1237.[2] Having provided criminal defendants with an appeal as a matter of right, the states must provide indigent defendants with the assistance of counsel on appeal, "[f]or there can be no equal justice where the kind of an appeal a man enjoys 'depends on the amount of money he has.' [Citation.]" (*Douglas v. California* (1963) 372 U.S. 353, 355 [9 L.Ed.2d 811, 83 S.Ct. 814].)

■ The right of an indigent defendant to appellate counsel gave rise to the issue considered in *Anders v. California* (1967) 386 U.S. 738 [18 L.Ed.2d 493, 87 S.Ct. 1396] (*Anders*): "the extent of the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal." (*Id.* at p. 739.) *Anders* explained that "[t]he constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of *amicus curiae.* . . . Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so

---

[2] Penal Code section 1237 provides: "An appeal may be taken by the defendant: [¶] (a) From a final judgment of conviction except as provided in Section 1237.1 and Section 1237.5. A sentence, an order granting probation, or the commitment of a defendant for insanity, the indeterminate commitment of a defendant as a mentally disordered sex offender, or the commitment of a defendant for controlled substance addiction shall be deemed to be a final judgment within the meaning of this section. Upon appeal from a final judgment the court may review any order denying a motion for a new trial. [¶] (b) From any order made after judgment, affecting the substantial rights of the party."

advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal." (*Id.* at p. 744.)

Our decision in *Wende, supra*, 25 Cal.3d 436, approved a modified procedure to ensure an indigent criminal defendant's right to effective assistance of counsel. In *Wende*, the defendant's appointed counsel filed a brief summarizing the proceedings and the facts with citations to the record, raised no specific issues, and called upon the appellate court to review the entire record in order to determine whether there was any arguable issue. Counsel also advised his client of the nature of the brief and informed the defendant that he would be allowed to file a brief on his own behalf. Counsel did not assert that the appeal was frivolous, nor did he request to withdraw, but he did state his intention to advise his client that he could move to have counsel relieved. The defendant did not file a brief.

■ This court's decision in *Wende, supra*, 25 Cal.3d 436, interpreted *Anders* to require the appellate court "to conduct a review of the entire record whenever appointed counsel submits a brief which raises no specific issues or describes the appeal as frivolous. This obligation is triggered by the receipt of such a brief from counsel and does not depend on the subsequent receipt of a brief from the defendant personally." (*Wende, supra*, 25 Cal.3d at pp. 441–442.) The court "recognize[d] that under this rule counsel may ultimately be able to secure a more complete review for his client when he cannot find any arguable issues than when he raises specific issues, for a review of the entire record is not necessarily required in the latter situation. [Citations.]" (*Id.* at p. 442.) Finally, the decision in *Wende* concluded that "counsel may properly remain in the case so long as he has not described the appeal as frivolous and has informed the defendant that he may request the court to have counsel relieved if he so desires." (*Ibid.*)

The United States Supreme Court approved this court's *Wende* procedure in *Smith v. Robbins* (2000) 528 U.S. 259 [145 L.Ed.2d 756, 120 S.Ct. 746] (*Robbins*). In the course of its analysis, *Robbins* identified four ways in which the *Wende* procedure is superior to other approaches that have been disapproved. First, *Wende* "requires both counsel and the court to find the appeal to

be lacking in arguable issues, which is to say, frivolous." (*Id.* at p. 280.) Second, "the court orders briefing if it finds arguable issues." (*Ibid.*) Third, "[c]ounsel's summary of the case's procedural and factual history, with citations of the record, both ensures that a trained legal eye has searched the record for arguable issues and assists the reviewing court in its own evaluation of the case." (*Id.* at p. 281.) Fourth, the *Wende* procedure requires two tiers of review, one by counsel and one by the appellate court. (*Ibid.*)

In *Robbins* the court further concluded that the *Wende* procedure is in some ways superior to Wisconsin's procedure, which the high court found valid in *McCoy v. Court of Appeals of Wisconsin* (1988) 486 U.S. 429 [100 L.Ed.2d 440, 108 S.Ct. 1895]. Wisconsin's Rules of Appellate Procedure require counsel to file a brief referring to parts of the record that arguably support the appeal *and* to discuss why the identified issue lacks merit. *Wende*, the high court observed, "requires a more thorough treatment of the record by both counsel and the court" than do Wisconsin's rules. (*Robbins, supra*, 528 U.S. at p. 283.) The high court also observed that Wisconsin's procedure "might divert the court's attention from more meritorious, unmentioned, issues. . . . [and] may predispose the court to reach the same conclusion [as counsel]. The *Wende* procedure reduces these risks, by omitting from the brief [those] signals that may subtly undermine the independence and thoroughness of the second review of an indigent's case." (*Id.* at p. 284.)

In summary, the constitutional right to assistance of counsel entitles an indigent defendant to independent review by the Court of Appeal when counsel is unable to identify any arguable issue on appeal. California's procedure for securing this right requires counsel to file a brief summarizing the proceedings and the facts with citations to the record, and requires the appellate court to review the entire record to determine whether there is any arguable issue. The high court's decision in *Robbins*—validating California's procedure—highlights the importance of the appellate court's responsibility in *Wende* appeals to perform a thorough review of the record.

### IV.

■ The independent judicial review mandated by *Anders, supra*, 386 U.S. 738, applies only to a defendant's first appeal as of right. (*Pennsylvania v. Finley* (1987) 481 U.S. 551, 557 [95 L.Ed.2d 539, 107 S.Ct. 1990]; *In re Sade C., supra*, 13 Cal.4th at pp. 972–974.) ■ The right to a direct appeal of a final judgment gives rise to a "cause" within the meaning of California Constitution article VI, section 14. (See *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 91, fn. 1 [40 Cal.Rptr.2d 839, 893 P.2d 1160] [right to "direct appeal" affords right to oral argument and written decision on the merits]; *id.* at p. 141 (dis. opn. of

Lucas, C. J.) [resolution of an appeal determines a "cause" within the meaning of the "in writing" provision]; *People v. Medina* (1972) 6 Cal.3d 484, 489–490 [99 Cal.Rptr. 630, 492 P.2d 686] [important incident of right to appeal from a superior court's judgment is the right to a written opinion pursuant to Cal. Const., art. VI, § 14].) Therefore, when a Court of Appeal affirms a judgment in a *Wende* appeal, it is disposing of a "cause" within the meaning of article VI, section 14, of the California Constitution, and must do so "in writing with reasons stated." (Cal. Const., art. VI, § 14.)

The Court of Appeal disposed of defendant's cause in writing, but stated only that "there are no arguable issues"—it did not expressly address (or even describe) defendant's contentions. Both *Anders, supra*, 386 U.S. 738, 744, and *Wende, supra*, 25 Cal.3d 436, 440, recognize the defendant's right in a *Wende* appeal to file supplemental contentions. This right stands in contrast to the general rule that a represented defendant has no right personally to present supplemental arguments. (*In re Barnett* (2003) 31 Cal.4th 466, 469 [3 Cal.Rptr.3d 108, 73 P.3d 1106].) Therefore, when a Court of Appeal affirms a judgment in a *Wende* appeal in which the defendant has filed supplemental contentions, the appellate court necessarily must have considered and rejected those contentions. In accordance with the constitutional requirement of "reasons stated," such an opinion must reflect the contentions and the reasons that they fail, just as the opinion would reflect these points if they were raised by counsel.

Although the written decision in a *Wende* appeal typically will not be certified for publication in the Official Reports and thus will not establish precedent for future cases, it will serve the other significant purposes identified in the constitutional debates—(1) providing guidance to the parties and the judiciary in subsequent litigation arising out of the same "cause," and (2) promoting a careful examination of each case and a result supported by law and reason. Having devoted its resources to reviewing the entire appellate record, the Court of Appeal is well positioned to forestall the unnecessary expenditure of *additional* judicial resources by gathering and setting forth in its opinion the bare information necessary for other courts to recognize which contentions asserted by the defendant have been considered and found lacking in arguable merit and which were considered unreviewable due to an inadequate record. Brief written reasons for the appellate court's decision also may assist federal courts, which otherwise would be unable to determine whether claims have been exhausted in the state courts. Finally, the appellate court's explanation of why the defendant's contentions fail may, in some

circumstances, persuade the defendant that counsel's conclusions are correct and thus prompt the defendant to abandon his or her efforts to obtain further judicial review.[3]

■ A written decision does not require an extended discussion of legal principles. (See *Lewis v. Superior Court* (1999) 19 Cal.4th 1232, 1262 [82 Cal.Rptr.2d 85, 970 P.2d 872] [a written decision is a statement of conclusions and of principal reasons; an opinion sufficiently states reasons if it sets forth grounds or principles]; *People v. Rojas* (1981) 118 Cal.App.3d 278, 289 [173 Cal.Rptr. 64] [brief written decision stating only essential facts and deciding only essential legal issues is adequate].) Moreover, a recitation of each of the defendant's assertions will not be necessary in all cases; the purposes of the constitutional requirement may in some circumstances be satisfied by a summary description of the contentions made and the reasons they fail. In order to serve the purpose of providing information sufficient to determine the scope of the contentions raised and resolved, however, the written decision must disclose whether the contentions failed on the merits or for some other specified reasons. In doing so, the opinion enables the defendant to learn, and the courts in subsequent proceedings to determine, whether particular contentions are subject to any procedural bar. (See, e.g., *In re Waltreus* (1965) 62 Cal.2d 218, 225 [42 Cal.Rptr. 9, 397 P.2d 1001] [arguments raised and rejected on appeal may not be raised again through habeas corpus proceeding]; *In re Dixon* (1953) 41 Cal.2d 756, 759 [264 P.2d 513] ["writ [of habeas corpus] will not lie where the claimed errors could have been, but were not, raised upon a timely appeal from a judgment of conviction"].)[4]

[3] In addition to promoting the purposes of California Constitution article VI, section 14, and conserving judicial resources, our conclusion that this constitutional provision applies in the *Wende* context facilitates the purposes of *Wende* review. As noted above, our *Wende* procedure relies on the efforts of the appellate court in resolving the appeal to a greater extent than does the United States Supreme Court's *Anders* procedure, in that our procedure requires counsel only to describe the facts and proceedings, while calling upon the Court of Appeal to review the entire record. The requirement that the Court of Appeal set forth its reasons in writing ensures the fulfillment of the more significant role played by that court as contemplated by *Wende*. (Cf. *Penson v. Ohio* (1988) 488 U.S. 75, 82, fn. 4 [102 L.Ed.2d 300, 109 S.Ct. 346] ["simply putting pen to paper can often shed new light on what may at first appear to be an open-and-shut issue"].) Accordingly, the requirement of a written opinion with reasons stated fulfills the goal of article VI, section 14, conserves public resources in the longer term (cf. *Robbins, supra*, 528 U.S. 259, 277–278 [one goal underlying procedures for screening frivolous appeals is to prevent needless public expenditures ]), and serves *Wende*'s directive that all appeals receive careful examination by our appellate courts.

[4] After describing the contention, the written decision's reasons, concluding that no arguable issue is raised by a contention, may consist of a brief statement identifying the flaw in the contention. Alternatively, a citation to pertinent case or statutory authority may be a more efficient way of identifying the reason a contention raises no arguable issue, as long as the citation clearly reveals the basis upon which the Court of Appeal so finds. For example, if a

The constitutional requirement that an appellate court state reasons for its decision does not require the inclusion of information or analysis beyond that necessary to apprise the reader of the contention considered and the reasons underlying that court's conclusion that the contention fails. The constitutional language itself refers only to the provision of "reasons," and the constitutional debates of 1878–1879 focused on the purpose of requiring a reasoned basis for the judgment rendered by an appellate court. When this mandate was added to our Constitution, there was no intermediate Court of Appeal, no *Anders* or *Wende* review, and far less habeas corpus litigation. The delegates thus had no reason to propose further requirements in connection with appellate opinions.

In light of the subsequent evolution of the law and the appellate court system, an opinion rendered by the Court of Appeal has come to serve additional purposes. In connection with a petition for review, the intermediate appellate court's opinion informs this court of the nature of the case as well as the contentions considered. The opinion also may be a significant source of information in future collateral proceedings in which only a limited record is provided. A brief description of the facts and procedural history of the case, as well as the crimes of which the defendant was convicted and the punishment imposed, will allow any court in a subsequent proceeding to focus more quickly on the contentions without having to expend resources gathering and reviewing the record to apprise itself of this information. A synopsis of the case will be particularly helpful when the defendant, as is frequently the situation,[5] pursues challenges in propria persona, after providing an incomplete or confused description of the prior proceeding.

---

defendant contends he or she desired but was not provided substitute counsel, and it appears the defendant failed to indicate on the trial court record a desire for new counsel, the court may describe the contention and cite *People v. Mendoza* (2000) 24 Cal.4th 130, 157 [99 Cal.Rptr.2d 485, 6 P.3d 150] ("Although no formal motion is necessary [to seek substitution of counsel], there must be 'at least some clear indication by defendant that he wants a substitute attorney' "). Other examples of cases a court might cite in response to common contentions raised on appeal are *People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267 [62 Cal.Rptr.2d 437, 933 P.2d 1134] (an appellate court should not find ineffective assistance of counsel unless all facts relevant to that claim have been developed in the record); *People v. Crandell* (1988) 46 Cal.3d 833, 859–860 [251 Cal.Rptr. 227, 760 P.2d 423] ("A disagreement concerning tactics is . . . insufficient to compel the discharge of appointed counsel, unless it signals a complete breakdown in the attorney-client relationship"); *People v. Holt* (1997) 15 Cal.4th 619, 667 [63 Cal.Rptr.2d 782, 937 P.2d 213] ("the test of whether evidence is sufficient to support a conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' "); and *People v. Turner* (1985) 171 Cal.App.3d 116, 125 [214 Cal.Rptr. 572] ("a plea of guilty waives any right to raise questions regarding the evidence, including its sufficiency or admissibility, and this is true whether or not the subsequent claim of evidentiary error is founded on constitutional violations").

[5] Although statistics are not available concerning the total volume of direct and collateral proceedings that challenge judgments rendered in *Wende* appeals, the numbers appear to be

Because the Court of Appeal in a *Wende* proceeding is required to review the entire record, it must perform the essential tasks necessary to gather the relevant facts, and it appears that summarizing this basic information in its written opinion will add little to the burden imposed upon the appellate court.[6] This is particularly so because, as noted above, counsel's *Wende* brief must set forth all of this information, with citations to the record. Finally, our examination of *Wende* opinions from all six appellate districts has disclosed that a large majority of these opinions already include most of this information, and many set forth additional information and analysis when the nature of the case suggests that a more extensive explanation would be useful. Accordingly, it appears that requiring basic information beyond the constitutional minimum to be provided—namely, the contentions made and the reasons they fail—has at most a minimal impact on the workload of the appellate courts.

These circumstances establish that significant efficiency in the processing of subsequent proceedings, including habeas corpus matters, can be achieved if the Courts of Appeal include in their *Wende* opinions a brief description of the facts and procedural history of the case, the crimes of which the defendant was convicted, and the punishment imposed.[7] Therefore, in the exercise of our supervisory power over the courts of this state (see, e.g., *People v. Pena* (2004) 32 Cal.4th 389, 403 [9 Cal.Rptr.3d 107, 83 P.3d 506]

---

significant. This court receives a substantial number of petitions for review of *Wende* opinions each year, despite the absence of any arguable issue on appeal and the consequent lack of a right to the assistance of counsel. These petitions seeking review by this court are filed even though the time within which to seek review is strictly limited, and even though such defendants most likely have been informed by counsel of the decision rendered by the Court of Appeal and that their contentions may be raised only by way of a petition for writ of habeas corpus. Moreover, this court regularly receives habeas corpus petitions following *Wende* opinions. Thus, these litigants have demonstrated significant motivation in pursuing their contentions. Presumably, California's trial courts and Courts of Appeal, as well as the federal courts, also receive numerous such filings.

[6] An amicus curiae brief filed on behalf of retired California appellate justices in *Robbins, supra*, 528 U.S. 259 described the internal procedures for processing *Wende* appeals as follows: "When a California appellate court receives a *Wende* brief, it assigns the case to a staff attorney who prepares a memorandum analyzing all possible legal issues in the case. Typically, the staff attorney then makes an oral presentation to the appellate panel and explains whether the case presents any arguable issues for appeal. See J. Clark Kelso, *Special Report on California Appellate Justice: A Report on the California Appellate System*, 45 Hastings L.J. 433, 461 (1994). Thus, as Professor J. Clark Kelso remarked in a report prepared for California's Appellate Courts Committee, Commission on the Future of the Courts, 'the *Wende* process duplicates in all relevant aspects the exact process that appellate counsel must follow in evaluating the merits of the case.' [(*Ibid.*)]" (*Robbins, supra*, 528 U.S. 259, Brief for Amici Curiae Retired Justices, 1999 WL 414236.)

[7] Not only does a description of the punishment imposed provide a useful context in which to evaluate the claims raised in subsequent proceedings, but a large portion of these claims raise issues challenging the defendant's sentence or asserting his or her right to credits against the prescribed term of imprisonment.

[directing the appellate court to refrain from employing a particular type of oral-argument-waiver notice]; *In re Podesto* (1976) 15 Cal.3d 921 [127 Cal.Rptr. 97, 544 P.2d 1297] [directing trial courts to render a brief statement of reasons in support of an order denying a motion for bail on appeal]), we direct the Courts of Appeal to include this information in their opinions in *Wende* appeals. We are sensitive to the possible burden this rule may impose in some instances, and we emphasize that such additional information may be set forth in a very brief manner.

These minimal requirements are in no way intended to discourage the Courts of Appeal from preparing opinions that describe the underlying litigation in greater detail and that analyze the contentions at greater length when doing so appears to the appellate court to be appropriate and useful. Depending upon the particular facts, procedures, and contentions, a more thorough opinion may promote the purposes of explaining why the defendant's contentions fail and of apprising other courts of the facts and principles that establish the correctness of the judgment. Moreover, in the course of reviewing the record, the Court of Appeal may discern that certain motions, stipulations, or other aspects of the trial court proceedings predictably might become relevant in, for example, a subsequent habeas corpus proceeding, if the defendant continues to challenge the judgment. We encourage the Courts of Appeal to include such information in their opinions when, in their view, it may be helpful in a future proceeding.

Finally, as is currently the practice of each of the Courts of Appeal, a *Wende* opinion affirmatively should note that counsel filed a *Wende* brief raising no arguable issue, that the defendant was apprised of his or her right to file a supplemental brief, that the defendant did or did not file such a brief, and that the court has reviewed the entire record and found no arguable issue.

■ Accordingly, in affirming the judgment rendered in a *Wende* appeal, the Court of Appeal must prepare a written opinion that describes the contentions personally raised by the defendant and the reasons those contentions fail. In addition, the Court of Appeal must provide a brief description of the underlying facts, the procedural history, the crimes of which the defendant was convicted, and the punishment imposed. Finally, we encourage the Courts of Appeal to include any further information they deem appropriate. We emphasize that what constitutes an adequate written opinion "necessarily is a subjective determination. [Citation.] 'The author of an opinion . . . must follow his [or her] own judgment as to the degree of elaboration to be accorded to the treatment of any proposition and as to the questions which are worthy of notice at all.' " (*Lewis v. Superior Court, supra*, 19 Cal.4th 1232, 1262.)

## V.

■ The decision rendered by the Court of Appeal in the present case did not meet the constitutional requirement of a written opinion with reasons stated. Although the decision adequately set forth the charges of which defendant was convicted, reviewed the *Wende* procedures followed, and noted that defendant exercised his right to submit written argument on his own behalf, it did not describe the contentions made by defendant or the reasons why his contentions were rejected by the appellate court. For these reasons, the decision below is inadequate. Rather than remand the appeal, however, we proceed to resolve this case on its merits, as we did in *Wende*.

As noted above, on July 21, 2003, a police officer witnessed defendant driving erratically, and when the officer and a second officer confronted defendant, he resisted them and thereafter declined to submit to alcohol tests. A felony complaint was filed three days later, but on October 15, 2003, a competency evaluation was ordered and criminal proceedings were suspended. (Pen. Code, § 1368.) On December 3, 2003, the court found defendant competent to stand trial.

The matter was tried before a jury on January 6, 7, and 8, 2004. The two arresting officers testified concerning defendant's conduct and appearance, and an expert testified as to the effects of alcohol on the human body. The parties stipulated that defendant had suffered a felony conviction in December 1996 for driving under the influence of an alcoholic beverage in violation of Vehicle Code section 23152. The jury found defendant guilty on two counts: (1) driving under the influence of alcohol and drugs with a prior felony conviction committed within 10 years (Veh. Code, §§ 23152, subd. (a), 23550.5, subd. (a)); and (2) resisting, delaying, or obstructing an officer (Pen. Code, § 148, subd. (a)(1)). In connection with the first count, the jury found true the allegation that defendant willfully refused a peace officer's request to submit to a chemical test (Veh. Code, §§ 23612, 23577, subd. (a)). On May 7, 2004, the trial court imposed the midterm sentence of two years' imprisonment for the felony, and a six-month term for the misdemeanor to be served concurrently with the felony sentence. It ordered defendant not to possess a firearm, revoked his driving privileges, and imposed a $400 general-fund fine plus a penalty assessment, a restitution-fund fine of $200, and a $20 court security fee. An additional restitution-fund fine was imposed, but was suspended pursuant to Penal Code section 1202.45.

On appeal, defendant's appointed counsel filed a brief pursuant to *Wende, supra,* 25 Cal.3d 436, setting forth the facts of the case and requesting that the appellate court review the entire record on appeal, but raising no specific issue. In response to notice from his counsel and the Court of Appeal of his

right to file a supplemental brief, defendant submitted in writing 15 points for the appellate court's consideration. We have reviewed the entire record and defendant's written contentions, and have not found any arguable issue. Defendant's assertions concerning the evidence admitted against him raise only a sufficiency-of-the-evidence claim. The evidence in the record is sufficient to support the jury's verdict. (See *People v. Holt, supra,* 15 Cal.4th 619, 667.) His assertions concerning facts that were not presented to the jury are not part of the appellate record and hence cannot be reviewed on the record before us. To the extent defendant challenges his prior felony conviction for driving under the influence of an alcoholic beverage, that challenge is barred by his stipulation at trial to that conviction. To the extent his contentions allege ineffective assistance of counsel, this claim cannot be resolved on the present record. (*People v. Mendoza Tello, supra,* 15 Cal.4th at p. 267.) Finally, defendant's allegation of bias on the part of the jurors is not supported by the appellate record.

The judgment is affirmed.

Kennard, J., Werdegar, J., and Moreno, J., concurred.

**CORRIGAN, J.,** Concurring and Dissenting.—I concur in part. I agree with the majority's conclusions that a *Wende* appeal (*People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]) constitutes a "cause," and that a *Wende* opinion must summarily describe and respond to any contentions raised by the defendant after counsel fails to find any arguable issues. (Maj. opn., *ante,* at p. 109.)

Where I part company with the majority is in its exercise of this court's supervisory power to impose additional requirements on the Courts of Appeal. While I do not object to asking the courts to identify the crimes of which the defendant was convicted and the punishment imposed, I would not require them to describe any facts or procedural details that are not directly relevant to claims made by the defendant. I would certainly not encourage them to anticipate future habeas corpus petitions; in the vast majority of *Wende* appeals this would simply be a waste of time. Collateral attack is most uncommon in these cases.

I hesitate to reach back to the 19th century for words of wisdom on a 21st century problem; as the majority notes, the constitutional debates of 1878–1879 involved nothing akin to *Wende* review. (Maj. opn., *ante,* at p. 122.) However, Clitus Barbour was onto something when he made the following remarks about the requirement of a statement of reasons: "We [do] not mean that they shall include the small cases, and impose on the country all this fine judicial literature, for the Lord knows we have got enough of that

already. To give us the reason for it does not take three lines." (3 Willis & Stockton, Debates and Proceedings, Cal. Const. Convention 1878–1879, pp. 1455–1456; see maj. opn., *ante*, at p. 115.)

We should bear in mind that *Wende* appeals are by definition meritless. In the exceptional case where *Wende* review discloses an arguable issue, briefing is sought and a conventional opinion is issued. When there are no arguable issues, the reviewing court should be permitted to dispose of the case with a minimum of "judicial literature." It should be sufficient to note the crimes committed, the sentence imposed, the filing of a *Wende* brief, whether the defendant raised any claims of his or her own and if so, the nature of those claims and the reasons they fail. Every case is important, but for these appeals, in which repeated review by appointed counsel and the court has revealed no meritorious issue, Mr. Barbour's prescription for a succinct statement of reasons should be followed.

Baxter, J., and Chin, J., concurred.