Filed 1/22/14  P. v. Thomas CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E059153 |
| v. | (Super.Ct.No. RIF134388) |
| MARK WILLIAM THOMAS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Helios (Joe) Hernandez, Judge.  Affirmed.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

### INTRODUCTION

In 2007, a jury found defendant guilty of possession of methamphetamine. (Health & Saf. Code, § 11378.)  Thereafter, the jury found true that defendant had sustained six prior prison terms (Pen. Code, § 667.5, subd. (b)) and three prior strike

1

convictions (Pen. Code, §§ 667, subds (c) & (e)(2)(A), 1170.12, subd. (c)(2)(A)). The jury also found true the four sentencing aggravating factors. After the court struck one of the prior strike allegations, defendant was sentenced to a total term of 31 years to life in state prison. Defendant appealed. On April 10, 2009, we affirmed the judgment. (*People v. Thomas* (Apr. 10, 2009, E045983) [nonpub. opn.])[1]

On November 15, 2013, defendant filed an in pro. per. petition to recall his sentence under Penal Code section 1170.126, known as the Three Strikes Reform Act of 2012. (Prop. 36, as approved by voters, Gen. Elec. (Nov. 7, 2012).) On March 15, 2013, the prosecution filed an opposition arguing that defendant was an unreasonable risk of danger to public safety. On July 11, 2013, defendant, through counsel, filed a "Proposition 36 Resentencing Brief."

On July 11, 2013, the trial court granted defendant's request to resentence him under Penal Code section 1170.126 and the two strike provisions of the three strike law.

On July 12, 2013, defendant filed a timely notice of appeal. On August 28, 2013, he filed a second notice of appeal.

## STATEMENT OF FACTS

### A. Underlying Facts

On January 18, 2007, around 10:00 p.m., Riverside County Sheriff's Department Sergeant Richard Heard went to the Best Western Hotel in Moreno Valley, which was

---

[1]     Defendant requested that we take judicial notice of the record in his prior appeal, case No. E045983. We hereby deny his request. Instead, we will refer to the prior appeal through the unpublished opinion we issued in that case.

2

known as a location to purchase drugs, to investigate possible drug activity. When the officer entered the lobby, he immediately recognized defendant, who was sitting in the lobby watching television. Defendant appeared to be under the influence of methamphetamine. Sergeant Heard located defendant's hotel room key in his right front pocket and proceeded to the room with defendant and two other deputies. In a tin box located on the bathroom counter in defendant's hotel room, the officers found four bags of methamphetamine, a mirror, a razor blade, a digital scale, and 180 baggies. It did not appear to Sergeant Heard that anyone else was staying in the hotel room. When defendant heard the sergeant tell another deputy he had located the tin box, defendant stated, "I prefer you not take that."

At the police station, after defendant waived his constitutional rights, in response to Sergeant Heard's question of why he had the items, defendant responded, "I sell dope. I sold dope today. I've been selling since the 70s." Defendant never indicated that someone else was staying in his room or had access to his room and never denied the items were his.

Based on the amount of methamphetamine, the scale, and the baggies found in defendant's hotel room, and the fact defendant appeared to be under the influence of methamphetamine, an expert opined the methamphetamine was possessed for sale.

Defendant's defense was that the methamphetamine belonged to a White female who had access to his room. Julio Casas, a California Housing Patrol employee, testified on behalf of the defense and claimed that he saw defendant sitting in the lobby watching television alone and that it did not appear defendant was under the influence of a drug.

3

Casas also stated that he had seen defendant with a White woman holding grocery bags in front of his room; she had asked for defendant on the night of the incident. However, he never saw defendant and the woman go into the room together.

Faby Contreras, an assistant manager at the hotel, stated that he had checked defendant into a room between 1:00 p.m. and 3:00 p.m. on the day of the incident. Defendant was with a White female and was charged for a double-occupancy room, but had been given only one key.

Defendant testified on his own behalf and stated that he had began using methamphetamine in the 1980's, but since being released from prison in November 2005, he had only used it five times. One such instance took place the day before the incident, on January 17, 2007. On that day, the police had arrested him at the Best Western for being under the influence of methamphetamine, and he had been taken to jail. He had been released from jail about 11:30 a.m. on January 18 and had returned to the hotel about 4:30 p.m. with Michelle Garcia. They went to the front desk, where defendant checked in for a second night and was given a second key. Defendant still had a key to his motel room from the day before.

Defendant and Garcia went to the room for a few minutes. Garcia was carrying a purse and a tin box. Garcia left the tin box in the room, and they left. Defendant claimed that Garcia never opened the tin box in front of him, never told him what was in it, and never asked him to keep it in a safe place. Defendant asserted that he had never used methamphetamine with Garcia and did not know if she used or sold drugs.

4

While Garcia went to her car, defendant went to the lobby to watch television. Garcia returned after a couple of hours. He saw Garcia leave the motel lobby around 9:00 p.m. and did not see her again that night. About 45 minutes later, the police stopped him in the courtyard of the hotel. He claimed that he was not under the influence of methamphetamine.

Four deputies then searched his room. Defendant claimed that after the sergeant had located the tin box, he had asked defendant what defendant wanted him to do with the tin box. Defendant told him the box did not belong to the sergeant and that he should put it back. Defendant denied possessing the tin box and its contents and asserted that it belonged to Garcia. He also denied being questioned at the police station regarding the methamphetamine and denied telling the sergeant the drugs were his or that he sold drugs.

Defendant admitted to having been convicted of burglary, grand theft, assault with a deadly weapon three times, possession of a firearm by a felon, possession of a controlled substance, and second degree robbery. (*People v. Thomas*, *supra*, E045983.)

**B. Motion to Resentence**

Defendant filed a Proposition 36 Resentencing Brief, arguing that he was "eligible for second strike resentencing under Penal Code section 1170.126." The prosecution opposed, arguing that defendant was a danger to society.

At the hearing on the motion, defense counsel stated that defendant had been a model prisoner, "[a]nd he [had] no disciplinary history in the past 14 years. And his last violent crime was approximately 20 years ago—18, . . . But given those two factors,

5

given his increasing age—he's nearly 60 years old at this point—he no longer poses a danger."

The prosecutor responded as follows: "And I think we have to look at it, the public safety issue. That seems to be, as defense indicated, the crux. And the defendant's criminal history dates back to 1974 up through 2007. And it's extensive. You have to look at the underlying facts of the [Penal Code section] 245. And you just touch and say a [Penal Code section] 245, it shouldn't be a, you know, serious or violent. But if you look at these facts that were in that [Penal Code section] 245 which are in the brief, they're pretty horrendous. [¶] And based on that, based on his criminal history, based on his violations of parole, dating back from '74, his other violent crimes, his [Penal Code section] 211 that he had, based on all that, the People believe that he is a significant risk to public safety."

The court then discussed its options under Proposition 36. The court recognized that defendant was "just a small-time doper, selling a little dope, using a little dope. The typical kind of people we get through here. And in his spare time, he commits petty theft so he can buy a little more dope. [¶] You know, he's settled down, to his credit, and now he's just a small-time criminal—which was very bad, but it was a long time ago. I think '95[.] [¶] . . . [¶] So in light of Prop 36, he's eligible for relief. And now, in his declining years, he's not as dangerous as he used to be. So, you know, '99 or 2000, I would have said he's still a danger to society, but now we're at 2013, I don't think he presents a danger to society. His motion is granted."

Thereafter, the court asked for recommendations from both defense counsel and the prosecutor. The prosecutor requested the maximum sentence. Defense counsel requested the midterm sentenced. The court stated: "And I've reviewed [defendant's] record. I mean, I know it because I went over it. He was convicted in the jury trial, but I did the sentencing because the visiting judge who did the jury trial wasn't available. So I'm totally familiar with [defendant]. I've read all the stuff that the two of you—the items that both of you have submitted. And even though he is getting less violent, he's still committing crimes. [¶] And your record does go back to, for us, the dawn of history, back in the '70s. And for that reason, the aggravated term's appropriate."

The court resentenced defendant to the upper term of three years, doubled, and a consecutive six years for the six prison priors, for a total of 12 years. The court awarded credits of 498 actual days and 248 conduct credits in his original sentencing, and 120 actual days and 60 days of conduct credits while waiting for resentencing, for a total of 926 days of local credit.

## ANALYSIS

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court to undertake a review of the entire record.

We offered defendant an opportunity to file a personal supplemental brief, but he has not done so.  Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the record and find no arguable issues.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI_____
                                                        J.

We concur:

McKINSTER_____
              Acting P. J.

MILLER_____
              J.