Filed 2/8/22  P. v. Williams CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOHN WILLIAMS III,<br><br>    Defendant and Appellant. | A159920<br><br><br>(San Mateo County<br>Super. Ct. Nos.<br>17NF011483A, 19SF005081A) |

This is an appeal from judgment after a jury convicted defendant John Williams III of making criminal threats (count 1) and attempting to dissuade a witness from testifying (count 2). After defendant waived a jury trial on his prior felony convictions, the trial court found them to be true and sentenced him to the low term of 16 months on count 1, to run concurrently with the middle term of two years on count 2. Defendant appealed, and his counsel has now filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 and *People v. Kelly* (2006) 40 Cal.4th 106, requesting that we conduct an independent review of the entire record on appeal. Counsel attests that defendant was notified of his right to file a supplemental brief; however, he waived this right. Having independently reviewed the record, we affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

On December 9, 2019, an amended information was filed charging defendant in case No. 17NF011483A with one felony count of making criminal threats against Jasmine H. on September 1, 2017, in violation of Penal Code section 422, subdivision (a),[1] and in case No. 19SF005081A with one felony count of attempting to dissuade a witness on November 7, 2018, in violation of section 136.1, subdivision (a)(2).[2] As to count 1, it was alleged defendant had multiple prior felony convictions within the meaning of section 1203, subdivision (e)(4).

A jury was sworn on December 10, 2019.[3] Jasmine, Deputy Khoury and Officer Evans offered testimony. Jasmine testified that defendant is the father of her child and the threesome planned to spend Labor Day together on September 1, 2017. Defendant had obtained concert tickets. However, Jasmine's mother was having health problems that required Jasmine to text defendant to cancel their plans at the last minute. Enraged, defendant responded: " 'Just don't ever call my phone again. You call my phone again, I

---

[1] Unless otherwise stated, all statutory citations herein are to the Penal Code.

[2] On the same date, the trial court granted the People's motion to consolidate case Nos. 17NF011483A and 19SF005081A.

[3] On October 9, 2019, the court held a hearing under *Faretta v. California* (1975) 422 U.S. 806 to consider defendant's request to proceed in propria persona. The court denied his request. Defendant renewed his motion about six weeks later. Another hearing followed, at which defendant and his attorney were questioned about defendant's capacity to represent himself. Defendant explained that he wished to "be lead on my case with counsel by my side." The trial court granted defendant's request, finding that he was capable of representing himself with his counsel acting as "second chair." The court also advised that should defendant change his mind, his counsel could take over as lead.

am going to fuck you up. Just for you lying to me, I'm on my way to fuck you up. You think you going to be hiding out at the motel with that nigger this weekend, just think when I catch your ass coming outside that house on your way to work.'"

Jasmine did not know who defendant was talking about, but she feared he was going to physically harm her. She texted back: " 'Whatever. My mom is about to have surgery.' " At that point, she received a text with a photograph of a handgun in someone's lap. Jasmine texted back: " 'My mom wants to talk to you.' "

Defendant and Jasmine continued to text back and forth, during which defendant demanded that she reimburse him for the concert tickets. Jasmine agreed but explained that she needed to first help her parents. Defendant responded: " 'I have nothing to do with that. You got until 12:30 p.m. Making my way through Vallejo right now.' " Jasmine understood that to mean defendant was coming to hurt her. Defendant continued: "Just want to let you know you be thinking you know me, but you don't know me. And I am going to switch cars. You got 20 minutes. So is that a yes or no? I am going to take it as a no. And you told me what hotel you in." The last text from defendant was a photo of someone getting into a car.

Fearful for the safety of herself and her child, Jasmine reported this incident to the South San Francisco Police Department. On their advice, she obtained an emergency protective order against defendant. Jasmine remained scared of defendant for six months to a year. Eventually, she began to feel bad and wished that he were back in their child's life.

On November 7, 2018, defendant, in custody on an unrelated charge, called Jasmine from jail. They discussed releasing some of defendant's property to Jasmine, and she told him she did not want to go to court.

Defendant replied that if she were subpoenaed, Jasmine could plead the Fifth Amendment and the case would be discharged. She did not understand him and did not agree to his plan.

During cross-examination, Jasmine denied defendant had been violent toward her, with the exception of once when he pulled her hair. Jasmine previously testified, at the preliminary hearing, that defendant did not physically harm her. However, at trial, she recalled a "pushing incident and a grabbing." On redirect, she also recalled an argument after which she told a police officer that defendant pushed her.

Deputy Khoury testified that one of her responsibilities for the San Mateo County Sheriff's Office is to monitor inmate phone calls at San Mateo County jails. In this role, she accessed defendant's November 7, 2018 phone call to his girlfriend and heard him say something about invoking her Fifth Amendment right so that she would not have to testify against him.

The recording of this call and its transcript were admitted into evidence. Defendant can be heard advising Jasmine that his attorney would contact her to explain "how to plead the fifth . . . ." Defendant then said, "[T]hey going to ask you your name . . . , and they going to ask you a question, and you say I exercise my right to plead the fifth. They goin do it like three times and then they going to tell you step down. And then they going to drop my case." (*Sic.*)

Officer Evans, in turn, testified that he was on duty at the South San Francisco Police Department on September 1, 2017, when Jasmine reported defendant's threatening text messages. Jasmine appeared to Officer Evans to be under a great deal of stress. He gave Jasmine the form to fill out to obtain an emergency protective order.

4

Later, Officer Evans contacted someone who identified himself as defendant to question him about the threatening text messages. Defendant explained that Jasmine kept contacting him when all he wanted was to be left alone. Defendant denied sending photos of a gun but acknowledged trying to scare Jasmine, which "probably" was not a good idea.

On December 12, 2019, the jury found defendant guilty on both counts. After defendant waived his right to a jury trial on the prior offense enhancement, the court found it true. On January 23, 2020, defendant was sentenced to two years on count 2 and 16 months concurrent on count 1.[4] Defendant timely appealed.

## DISCUSSION

After independently reviewing the record, we agree with defendant's counsel there are no reasonably arguable legal or factual issues for our consideration. (*People v. Wende, supra*, 25 Cal.3d 436; *People v. Kelly, supra*, 40 Cal.4th 106.) The jury convicted defendant of making criminal threats (§ 422, subd. (a); count 1) and dissuading a witness from testifying (§ 136.1, subd. (a)(2); count 2). Substantial evidence supported these findings.

As to count 1, a person makes a criminal threat by "willfully threaten[ing] to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the

---

[4] The court also imposed various fines, fees and assessments. However, as defendant acknowledges, these were subsequently removed from the abstract of judgment.

5

person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety . . . ." (§ 422, subd. (a).) Here, based on testimony from Jasmine and Officer Evans, the jury could find that defendant unequivocally threatened that he was " 'on [his] way' " to " 'fuck [Jasmine] up' " in text messages and thereby caused Jasmine to reasonably be in sustained fear for her and her child's safety.

As to count 2, a person commits the crime of dissuading a witness by "[k]nowingly and maliciously attempt[ing] to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law." (§ 136.1, subd. (a)(2).) Testimony from Jasmine and Deputy Khoury, as well as the transcript from defendant's November 7, 2018 phone call from jail, proved that he knowingly and maliciously attempted to dissuade Jasmine, a victim and witness, from testifying at his trial.

The trial court then found true defendant's prior convictions before sentencing him to the 16-month low term on count 1, to run concurrently with the two-year midterm on count 2. The trial court's sentencing decisions were within its discretion. (*People v. Reneaux* (2020) 50 Cal.App.5th 852, 874 [absent a clear showing that a sentencing decision was arbitrary or irrational, the trial court should be presumed to have acted to achieve legitimate sentencing objectives].)

Having ensured defendant received adequate and effective appellate review, we affirm. (*People v. Wende, supra*, 25 Cal.3d at pp. 441–442; *People v. Kelly, supra*, 40 Cal.4th at pp. 117–119.)

6

# DISPOSITION

The judgment is affirmed.

_____
Jackson, P. J.

WE CONCUR:

_____
Simons, J.

_____
Needham, J.

A159920/*People v. John Williams III*

7