Filed 6/21/13  In re Rafael Z. CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re RAFAEL Z., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RAFAEL Z.,<br><br>        Defendant and Appellant. | A137724<br><br>(Contra Costa County<br>Super. Ct. No. J12-01599) |

Appellant Rafael Z. was found by the juvenile court to have committed a second degree robbery (Pen. Code, § 211, 212.5, subd. (c)).[1]  He was placed at a youth ranch facility, but absconded from that facility the following day.  He later admitted a probation violation resulting from that escape and was ordered detained in a different youth facility. Rafael has filed a timely notice of appeal from both the jurisdictional and dispositional orders.

Assigned counsel has submitted a *Wende*[2] brief, certifying that counsel has been unable to identify any issues for appellate review.  Counsel also has submitted a declaration confirming that Rafael has been advised of his right to personally file a supplemental brief raising any points which he wishes to call to the court's attention.  No

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *People v. Wende* (1979) 25 Cal.3d 436.

1

supplemental brief has been submitted.  As required, we have independently reviewed the record.  (*People v. Kelly* (2006) 40 Cal.4th 106, 109–110.)

We find no arguable issues and therefore affirm.

## I.  BACKGROUND

*The Jurisdictional Hearing*

Jurisdictional hearings were held in the juvenile court on December 13 and December 24, 2012, and the following evidence adduced:

On November 17, 2012, at about 10:00 a.m., 14-year-old Juan was walking home with two shopping bags of clothing he had just purchased.  An older blue Honda pulled to the curb in front of him and Rafael's codefendant, Jesus C., exited the car, said something to Juan about "talking shit."  Juan saw Rafael exit the car sometime after Jesus.  Jesus demanded that Juan empty his pockets.  Jesus punched Juan, knocking him to the ground, while someone that Juan believed was Rafael rifled through Juan's pockets.  Rafael and Jesus took Juan's cell phone, knife, a photo of his girlfriend, hat, and the bags of clothing.  Rafael and Jesus then returned to the vehicle and drove away towards Detroit Avenue in Concord, California.

Juan walked home, called the police and provided the officers with a description of his attackers.  He told the investigating officer that one of the people who robbed him was known as "Stomper" or "Little Stomper."  The officer retrieved a photograph of Rafael from a police database based on the moniker, and Juan identified the photograph as "Stomper."  At about 11:45 a.m., Rafael and Jesus were stopped by the Concord police walking on the street approximately one street over from the scene of the robbery.  Juan was brought to the scene and identified both Jesus and Rafael as the people who robbed him.

A greenish-gray folding knife was found on Rafael's person.  Juan told the investigating officers that Rafael was the one that had told him to empty his pockets, and that Rafael had used the knife in the robbery, holding it in his left hand.  At trial, Juan admitted that the knife was his, and said that it had been taken from his pocket during the

2

robbery. The stolen phone and clothing were not recovered, and the officers could not locate the blue Honda.

Jesus testified. He admitted to being in a friend's car on the day of the incident, and initiating a fight with Juan because Juan had been "talking smack" about him. He denied taking anything from Juan. Jesus said that Rafael was present, but did not participate in the confrontation with Juan.

The court found Juan to be a credible witness and found Jesus not to be credible. The court found beyond a reasonable doubt that both defendants were guilty of second degree robbery. The court declined to find true allegations against Rafael that he personally used a knife in the robbery (§ 12022, subd. (b)(1)) and that the crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)).

*The Dispositional Hearing*[3]

At the time of the incident, Rafael was 16 years old and living with his mother, three sisters and nephew in Concord. His father's whereabouts were unknown. Rafael had no prior juvenile court history.

The probation department's report and recommendations noted that Rafael had been expelled from Pleasant Hill Middle School for punching a teacher. He admitted using marijuana, and said he did so on the date of the robbery. Rafael met the criteria for special education due to an emotional disturbance and specific learning disability and had an individualized education program. Rafael admitted to the probation officer that he associated with members of the Sureños gang. While in custody, juvenile hall staff reported that Rafael exhibited defiant and disrespectful behavior, had threatened other residents in his unit, and was placed on maximum security after he attacked another resident. Noting that Rafael's mother was in denial about his offense and his gang membership, the probation officer recommended an out-of-home placement in a "highly structured setting." The court determined the maximum period of confinement to be five years, less credit for actual custodial time.

---

[3] The dispositional hearing was held on January 14, 2013.

Rafael's attorney requested placement in to the Orin Allen Youth Rehabilitation Facility (OAYRF), a Contra Costa County youth ranch. The probation department sought a more restrictive placement that could accommodate Rafael' special education needs, but the court stated that it wanted to give Rafael "a chance" at the less restrictive ranch facility. The court found that Rafael's welfare required that he be removed from the custody of his mother (Welf. & Inst. Code, § 726, subd. (a)(3)) and committed Rafael to OAYRF for a period not to exceed 12 months, plus an additional 90-day conditional release/parole period. The trial court noted that during the jurisdictional hearing members or friends of Rafael's family had made gang signs and that both defendants "have gang problems." The court found that it was appropriate to impose probation conditions including gang orders. The court imposed probation conditions including that Rafael: (1) be at his legal residence between the hours of 9:00 p.m. and 6:00 a.m., unless accompanied by a parent or guardian; (2) not use or possess illegal drugs or alcohol and submit to testing; (3) not use or possess weapons or replica guns; (4) submit his person, property, any vehicle under his control, and his residence to search and seizure by any peace officer any time of the day or night with or without a warrant; (5) avoid gang associations, colors, clothing, insignias, signs, paraphernalia and activities; (6) not be on a school campus unless enrolled in the school; (7) provide restitution in an amount to be determined; (8) attend and participate in individual counseling; (9) have no contact with Jesus or the victim; and (10) write an apology letter to the victim within 30 days. The court also imposed a restitution fine of $300.

Within a day of his arrival at OAYRF, Rafael escaped. On January 16, 2013, a Welfare and Institutions Code section 777 probation violation was filed and a bench warrant was issued. Rafael surrendered to police on January 26, 2013. On February 4, 2013, Rafael, represented by counsel, admitted the probation violation. The court requested an updated disposition report. On March 18, 2013, the court again found that custody in the home was contrary to Rafael's welfare and ordered him detained in a different out-of-home placement called Courage to Change. It imposed the same probation conditions.

4

On January 23, 2013, Rafael filed a notice of appeal from the findings and orders of December 24, 2012 (jurisdiction), and January 14, 2013 (disposition).

## II.    DISCUSSION

We find no arguable issues. Rafael was represented by competent counsel throughout the proceedings. " 'The decision of the juvenile court or superior court may be reversed on appeal only upon a showing that the court abused its discretion in its commitment of the minor. A reviewing court must indulge in all reasonable inferences to support the findings of the juvenile court, and such findings will not be disturbed on appeal when there is substantial evidence to support them. [Citations.]' " (*In re Jose R.* (1983) 148 Cal.App.3d 55, 59.) In determining whether there is sufficient evidence to support a court's findings, we review the entire record in the light most favorable to the prosecution to see if any rational trier of fact could have been so persuaded. (*People v. Hovarter* (2008) 44 Cal.4th 983, 996–997.) It is the exclusive province of the trier of fact to determine the credibility of a witness and to resolve evidentiary inconsistencies, and we must defer to the factfinder's credibility resolutions. (*People v. Young* (2005) 34 Cal.4th 1149, 1181.) Our examination of the record indicates the requisite evidentiary support for the findings made by the trial court.

A juvenile court's dispositional order may be reversed on appeal only upon a showing the court abused its discretion. " ' "We must indulge all reasonable inferences to support the decision of the juvenile court and will not disturb its findings when there is substantial evidence to support them." ' [Citation.]" (*In re Robert H.* (2002) 96 Cal.App.4th 1317, 1330.) We find no abuse of discretion in the out of home placement ordered by the court, or in the probation conditions imposed. A juvenile court has broad discretion in formulating probation conditions, and may impose " ' "any reasonable condition that is 'fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' " ' [Citations.]" (*In re Sheena K.,* (2007) 40 Cal.4th 875, 889; see Welf. & Inst. Code, § 730, subd. (b).)

## III.    DISPOSITION

The judgment is affirmed.

5

                                 _____

                                 Bruiniers, J.

We concur:

_____

Simons, Acting P. J.

_____

Needham, J.