Filed 2/4/14  P. v. Reta CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>MIGUEL ANGEL RETA,<br><br>        Defendant and Appellant. | A138272<br><br>(San Mateo County<br>Super. Ct. No. SC074580) |

Defendant appeals from his conviction of several counts of lewd acts upon the body of a child under 14 years of age and oral copulation by force or fear.  After defendant filed a timely notice of appeal, appellate counsel was appointed to represent him.  Appointed counsel has filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) (see *Anders v. California* (1967) 386 U.S. 738 (*Anders*)), in which he raises no issue for appeal and asks this court for an independent review of the record.  (See also *People v. Kelly* (2006) 40 Cal.4th 106, 124 (*Kelly*).)  Counsel attests that defendant was advised of his right to file a supplemental brief.  We have received no such brief.

We have examined the entire record in accordance with *Wende*.  We agree with counsel that no arguable issue exists on appeal and affirm.

### *Procedural Background*

On November 14, 2011, an information was filed charging defendant with lewd acts upon the body of a child under 14 years of age (counts 1-4, 6-37, 39-40, 42-43, 45-

1

46, 48-49, 51-52, 55-58, and 60-63), in violation of Penal Code[1] section 288, subdivision (a); oral copulation or sexual penetration of a child under 10 years of age (counts 38, 41, 44, 47, and 50), in violation of section 288.7, subdivision (b); forced oral copulation (count 53), in violation of section 288a, subdivision (c)(2); rape (count 54), in violation of section 261, subdivision (a)(2); and continuing sexual abuse (counts 5, 59 and 64), in violation of section 288.5. It was further alleged that defendant had committed offenses against more than one victim "in violation of section 667.61, [subdivision (e)](4)."

On January 7, 2013, the jury trial began. On January 17, 2013, the court granted defendant's motion for acquittal on counts 38, 41, 44, 47, 50, and 54. The court also granted the prosecution's request to dismiss counts 5, 59, and 64.

On January 24, 2013, the jury found defendant not guilty of count 1. The jury found defendant guilty of counts 6, 16, 26, 27-37, 39, 42, 45, 48, 51, 53, 55-58, and 60-63, and found the "more than one victim" enhancement allegation to be true as to each count. As to the remaining counts, the jury was unable to reach a unanimous verdict.

On March 29, 2013, the court sentenced defendant as follows: on count 55, a term of 15 years to life; plus consecutive terms of 15 years to life on counts 30, 53 and 60, for a total term of 60 years to life. As to each of the remaining counts of conviction (6, 16, 26, 27, 28, 29, 31, 32, 33, 34, 35, 36, 37, 39, 42, 45, 48, 51, 56, 57, 58, 61, 62, and 63), the court imposed a term of 15 years to life to run concurrent to the sentence imposed on count 55. The court granted defendant's motion for a mistrial, nunc pro tunc to January 24, 2013, on the counts on which the jury was unable to reach a unanimous verdict, and also granted the prosecutor's motion to dismiss those counts. The court imposed a restitution fine in the amount of $280 pursuant to section 1202.4, subdivision (b). Pursuant to section 1202.45, the court imposed an additional restitution fine in the same amount.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

### *Factual Background*

The charges in the case concern four different complaining witnesses who were all nieces of defendant. As to the counts involving M.2 there were no convictions. Consequently, the statement of facts will be limited to the counts involving the remaining victims.

***M.1*** (Counts 60 through 63)

M.1 was 17 years old at the time of trial. Defendant is her uncle.

From third to sixth grade, M.1 would go to her aunt and uncle's home after she got out of school. She would be there for approximately two to three hours until her parents got off work.

Most of the time, when she went to defendant's home, she would be alone with him. During her visits, he would say and do things that would make her feel uncomfortable. On one occasion, he talked about sex positions and how sex felt; although she cannot recall what he said exactly, she remembers feeling awkward. The conversation was not very long, and he did not show her anything when he was talking.

On four to five different occasions, defendant tried touching her and told her it would tickle her "vagina part." Over her clothes, he would place his fingers on her vagina, rub it, and then smell his fingers. Although this made her very uncomfortable, she never told him how she felt, and instead would try to avoid him by waiting for her parents in a separate area away from him. On another occasion, defendant pulled her shirt so he could peek underneath.

The last time she was in defendant's apartment was on a night she had slept over. She was in the sixth grade at the time. On that night, she had fallen asleep on the couch; defendant and her cousin were sleeping on the floor, her cousin was closest in proximity to her. When she woke up, she noticed her blanket in defendant's hand and that he was pulling down her zipper. She asked him, "What are you doing?" Defendant pulled his hand away and said that he was putting the blanket back on her. Because he had pulled her zipper down, she later had to zip her pants back up.

3

Throughout all of this, M.1 wanted to tell her parents what defendant had been doing to her, but afraid they were not going to believe her, she did not tell them. At some point, M.1 overheard her sister M.2 say something to their father, which prompted her to disclose what defendant had been doing with her.

*E.* (Counts 55 through 58)

E. was 18 years old at the time of trial. Defendant is her uncle.

When she was younger she would go to visit her aunt and uncle's home with her mother and her sisters. In the fourth grade, she started going over to her aunt and uncle's after school three to four times a week. Occasionally, she would be there alone with defendant, but most times her cousins were there with her. She stopped going over there in the eighth grade when her family moved to another city.

Beginning when she was in the fourth grade, defendant would try to kiss her on the lips whenever she came over; it was not a greeting when she first arrived, and it was not a farewell as she was leaving. She does not remember if he said anything when he kissed her. He would kiss her when they were alone and while her mother and aunt were around. It would always take place in the living room. Whenever he would try to kiss her, she would tell him to stop and would turn her head to the side, so she could avoid it; there were only a few occasions when she did not move her head in time, and he ended up kissing her on the lips. Even after telling him to stop, defendant continued trying to kiss her.

Starting when she was in the sixth grade, defendant began rubbing her shoulders. She never asked him to do it and would push him off to let him know that she did not like it. Even though she would push him off, he continued rubbing her shoulders almost every time she visited. He would do this in the presence of her cousins, her mom, and her aunt and he would do it when they were alone.

At some point later, she shared this information with her mom and a police officer.

*I.* (Counts 6, 16, 26 through 37, 39, 42, 45, 48, 51 and 53)

I. was 14 years old at the time of trial. When she was in the fifth grade, she saw defendant, her uncle, on Wednesday and Thursday mornings at his apartment in

4

San Mateo; she occasionally saw him after school. Defendant drove her and her cousin to school. When defendant drove her to school, she was always ready to go, while her cousin would still be getting ready. Her aunt would tell her to go wait in the car, so defendant would go wait with her. Defendant always went down to the car first. Each time they waited, defendant would put his hand inside her underwear and touch the skin of her vagina; she does not know if he placed his hands inside her vagina. He would keep his hand there for approximately 10 minutes or until her cousin got in the car.

Defendant would also kiss her on the lips. He never said anything before or after he kissed her. He kissed her more than once, but not as many times as he touched her vagina.

In the sixth grade things got worse.

On the afternoons when she was out of school, defendant would put his mouth on her vagina and rub her breasts, in his living room.

She cannot recall if his hands touched the skin of her breasts. It did not hurt and he did not do anything that was physically painful. He would come in, pull her down on the ground, pull off her pants, and then would place his mouth on her vagina. This happened frequently, but she cannot say if it was more than 500 times. In the apartment with them were her two younger cousins, defendant's children, who were five and younger. This almost always took place in his living room; there was only one time when it took place in his bedroom. This occurred, almost always, when no adults were around. Eventually, she told her mother what defendant had been doing.

### *Defendant's Arrest and Police Interview*

On November 4, 2010, police arrested defendant in San Mateo. He was subsequently interviewed at the police department by Detective Lupe Mejia and Sergeant Kimber Joyce, and the interview was video recorded. The video recording of the interview was played for the jury.

At the beginning of the interview, defendant was read his Miranda rights, and indicated that he understood them. He was then asked some background questions concerning his job, where he lived, and about his wife and family.

He was then asked why he was there, and responded that it was because he made a mistake by touching his nieces, M.1, M.2, and I. He explained that he is a very loving person with children, and sometimes when they would play with him, he would touch their parts, but nothing else.

The first time this occurred was with M.1 when she was about six or seven. Her dad would call him and ask him to pick her up from school and bring her over to his house. He would be tickling her and watching TV when suddenly touching her private part over her clothes came to mind. So he would touch her private part over her clothes by giving her massages. Defendant first said he did not do this for satisfaction or for a need, but later in the interview admitted that when he touched M.1, he would feel sexually satisfied. He did not remember the age he stopped doing this, but said he did it approximately five or six times over a period of two or three weeks, or until she was in the fifth grade.

Next was I. Between the ages of six and seven until she was eight or nine, he would touch her in the car under her pants and over her underwear. He would sometimes touch her vagina under her underwear. He would rub her vagina and sometimes he would penetrate it between the lips with his fingertip. He did this more or less five to 10 times.

On another occasion with I., he was tickling her when they were playing. She was six or so at the time. They would laugh, so he would pass his hand by her privates and sometimes he would touch her with his mouth. He would blow into it and also would kiss her on the mouth and down in her private area. He also used his tongue and licked her on the "upper part." Because she showed a liking to what he was doing, by laughing and not saying anything, this gave him sexual satisfaction. He did this at least two or three times a week. When asked if it could have been over 20 times, he said, "more or less."

On another occasion with I., the two were wrestling. She got on top of him, so he tried kissing her. At some point, she lay down. He pulled her shorts to the side and

6

placed his erect penis between her legs, on the side of her vagina. There was never any penetration.

Although he initially denied doing anything wrong with E., he recalled later that he tried to kiss her on the mouth when she was 13 or 14. The reason why he tried kissing her was to see if she liked it and if she did, he would have continued doing it. There was another occasion when she told him her back was hurting her because of her backpack, so he gave her a massage. When he gave her the massage he felt some form of attraction, but because she was his niece, he knew he should not be feeling that way.

After the interview was completed, defendant telephoned his wife. He indicated that he was very sorry that he had made an error, a sin, something very big, very grave and that he was going to pay for all his errors because that's what he deserved and that he had no forgiveness from God.

Having reviewed the entire record in accordance with *Wende* and *Anders*, we agree no arguable issue exists on appeal. We find that defendant was at all times represented by competent counsel who ably protected his rights and interests, no inadmissible evidence was received nor admissible evidence rejected by the court, no instructional error was made by the court, and there was no error in the sentencing process or the sentence.

### *Disposition*

We affirm the judgment.

7

_____
Becton, J.*

We concur:


_____
Dondero, Acting P.J.


_____
Banke, J.


* Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8