Filed 12/9/14  P. v. Cramer CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061191 |
| v. | (Super.Ct.No. SWF1203327) |
| JACOB DANIEL CRAMER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Michael J. Rushton, Judge.  Affirmed.

Richard Power, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Jacob Daniel Cramer appeals after he pleaded guilty to a single charge of second degree robbery and admitted a gang enhancement.  We affirm.

1

FACTS AND PROCEDURAL HISTORY

In September 2012, when defendant was 17 years old, he robbed a bank. Defendant went to a teller window and said he wanted to cash a check. He placed an envelope on the counter. The teller asked defendant to remove the check from the envelope; defendant pulled out a piece of paper and presented it to the teller. The paper was a note demanding money and stating that defendant had a bomb. Defendant was wearing a backpack at the time. The teller took money out of her drawer and gave it to defendant. An accounting of the teller's drawer showed that defendant had taken $3,277. Defendant apparently left the bank on foot.

The police responded to the bank's silent alarm, but arrived after defendant had left. Other customers and bank employees gave the police a description of defendant, and some said they could identify him again. Some of the witnesses also noticed a second man who seated himself in front of an unoccupied banker's desk with no apparent business. The second man was dressed in a white t-shirt. A bank employee at another desk, who was assisting another couple, asked the man if she could help him. The man stated that he wanted to open an account, but he did not have any identification. The bank employee advised the man that he would be unable to open an account if he had no identification. After the robbery, the bank employee suspected that the second man may have been involved. A witness in the bank parking lot saw a man in a white shirt come out of the bank a short time before defendant came out. The witness noticed a gray van waiting in the parking lot; the van was parked backwards in its parking space and the

sliding door was open. The man in the white shirt came out of the bank and got into the back of the waiting van, closing the sliding door. The van then drove off.

A few days later, the police arrested Alexus Sparks on an unrelated matter. Sparks told the officers that she had information about the bank robbery, because she knew someone who had bragged about committing the robbery. Sparks was acquainted with Rodney Jeter; Jeter in turn knew someone called "Baby Crim," who was later identified as defendant. Sparks knew that "Baby Crim" claimed membership in the "L Squad" criminal street gang. Sparks was with Jeter and defendant a day before her arrest when the two men were talking and laughing about the bank robbery. Both Jeter and defendant described passing a note to the teller, who gave them $2,000. Jeter got a share of the money and used some of it to pay for a motel room where Sparks was hanging out with Jeter and defendant. Sparks believed that both men had been involved in the robbery.

From the information given by Sparks, police were able to find and arrest defendant the following day. Defendant initially gave a false name. Defendant was fingerprinted, and the police discovered his true identity. Defendant waived his constitutional rights and agreed to speak to the police. At first, defendant denied any involvement in the bank robbery. After he was shown still images from the bank's video surveillance camera, defendant then admitted that he was the robber. Defendant said he and another suspect had planned the robbery and walked to the bank. He had prepared the demand note with the bomb threat. Defendant did not have a bomb, but he wanted the teller to believe he did so that she would give him the money. Defendant walked out

3

of the bank with over $3,000 and ran to a predetermined rendezvous point.  Defendant eventually admitted that there were two other people involved, although he refused to name them.  They split the proceeds from the robbery three ways; each participant took over $1,000.  Defendant was arrested and booked into juvenile hall.

Defendant was charged in an amended felony complaint with one count of second degree robbery (Pen. Code, § 211) (count 1), one count of making criminal threats (Pen. Code, § 422) (count 2), and one count of burglary (Pen. Code, § 459) (count 3).  As to each count, an allegation was added that the offense was committed for the benefit of, at the direction of, and in association with a criminal street gang (Pen. Code, § 186.22, subd. (b)(1)(A)).

Defendant entered into a plea bargain shortly after his arrest.  He waived his right to a preliminary hearing, and agreed to plead guilty to count 1 (second degree robbery) and admit the gang enhancement on that count, in exchange for a sentence of 12 years in prison, and dismissal of the remaining charges and enhancements in the complaint.  Defendant also had charges in two other cases that were disposed of at the same hearing.  Defendant also agreed to plead guilty in the second case to possession of a controlled substance (methamphetamine) for sale (Health & Saf. Code, § 11378) for a maximum possible sentence of three years, and to plead to a misdemeanor count of giving false information to a peace officer (Pen. Code, § 148.9), with a sentence of one day in custody, with credit for time served.

4

Defendant acknowledged that he had initialed and signed the change-of-plea form, and that he had read and understood the waivers of his rights and the consequences of his pleas. He also specifically stated that he had no additional questions for the court or for his attorney before taking the pleas. Defendant expressly admitted that the robbery was done for the benefit of, at the direction of, or in association with a criminal street gang.

Defendant requested immediate sentencing. The court sentenced defendant, as agreed, to the low term of two years for the robbery, plus 10 years for the gang enhancement, for a total of 12 years in state prison. The court imposed the middle term of two years for the possession of methamphetamine for sale, to run concurrently to the robbery and gang enhancement sentence. On the misdemeanor matter, the court imposed a term of one day in county jail, with credit for the time defendant had already served, thus terminating jurisdiction on the misdemeanor. The court ordered defendant housed with the Department of Juvenile Justice, and also ordered the probation department to prepare a report concerning whether defendant should be committed to the Department of Juvenile Justice (see Welf. & Inst. Code, § 1731.5), as he was a minor at the time he committed the current offense. The report recommended a number of programs or treatments from which defendant could benefit during his incarceration.

After several months in custody, defendant sent a letter to the trial court, claiming that his trial counsel had rendered ineffective assistance in the trial court (plea) proceedings. The court received defendant's letter in May 2013, and noted in the minutes that it had considered the matter on June 13, 2013, but took no action. Defendant sent a

second letter, which was received in July 2013. Defendant again asserted ineffective assistance of counsel. Defendant mailed a notice of appeal received by the court in August 2013; it was marked "received" but not filed with the court. The notice of appeal was accompanied by a request for a certificate of probable cause. In October 2013, the court took no action on defendant's request to file a late appeal.

Defendant filed a petition for writ of habeas corpus seeking leave to file a late notice of appeal. This court granted the petition in May 2014,[1] and ordered defendant's notice of appeal, received in the trial court on August 26, 2013, deemed timely filed. The trial court issued a certificate of probable cause on May 15, 2014.

## ANALYSIS

Counsel appointed for defendant on appeal has filed a brief under authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493], setting forth a short statement of the case and summary of the facts. Counsel has identified one possible area of inquiry to guide our review of the record: whether defendant was denied effective assistance of counsel in admitting the enhancement that defendant had committed the offense for the benefit of a criminal street gang.

Defendant has also been offered the opportunity to file a personal supplemental brief, setting forth any issues he wishes this court to review. Defendant has not filed a

---

[1] We grant defendant's motion to take judicial notice of this court's order in case No. E059993.

personal supplemental brief, although he did mail letters to and file a notice of appeal in the trial court, giving his perspective on possible deficiencies in his representation in the trial court below.

Defendant's first letter to the court, received and filed in June 2013, complained that he did not receive adequate representation from his trial attorney. Defendant said that his attorney "Did not Inform me of my options Available To me Related To This Offense" (*Sic*.), and asked for the case to be reheard. Defendant felt the result was unfair because his attorney advised him to take a plea deal less than two weeks after defendant's arrest. Defendant claimed that he had "no Knowledge of The other Routes I could Have Taken Had I not Signed The Deal." (*Sic*.) The trial court's minute order recited that it had read and considered defendant's ex parte communication, but would take no action in response.

Defendant's second letter, dated July 23, 2013, again requested rehearing in his case. Defendant asserted: (1) He was underage without a legal guardian to advocate for him; he had no one to turn to for advice about his plea deal. (2) His trial attorney "failed To provide me with Honest Answers To my questions, And The options Available To me Related To This offense." (*Sic*.) (3) The gang enhancement was improper, because defendant used the money from the robbery for personal items: clothing, food, drugs, and other items. Defendant claimed there was no evidence to support the gang enhancement, because "I Had no Co-Partners, I was not a Documented gang member, And Have no prior arrest with Documented gang members." (*Sic*.) (4) Defendant did

7

not have sufficient time to consider his plea.  The bargain was reached less than two weeks after his arrest, and "13 Days isn't enough Time for Anyone To Be Able To Make a 12 Year Decision on There life, especially a 17 Year old boy with no Knowledge of what's going on Around Him." (*Sic*.)  Defendant claimed he was confused and stressed, and had "no Time To weigh my options or Think of other Routes I Could Have Taken legally.  I Signed Away 12 Years of My life without fully Knowing The Impact Behind my Decision." (*Sic*.)

Defendant's notice of appeal repeated many of the same assertions:  he was underage and had no legal guardian to consult before he pleaded guilty; his attorney failed to present him with other options; he did not commit the crime to benefit or promote his gang, as he spent the money on himself and had no "co-partners" in the crime; and he was too confused and did not have sufficient time to consider his decision to plead guilty.  Defendant raised one new concern:  he had been required to serve 85 percent of his sentence, and should have been required to serve only 80 percent.

None of defendant's contentions are meritorious.

Defendant was 17 years old at the time of the plea proceedings.  He may or may not have had a legal guardian with whom to discuss his predicament, but he was represented by experienced counsel.

Defendant complains that his attorney did not tell him about other options he might have pursued in dealing with the charges.  However, defendant was charged by complaint with three felony offenses, and three gang enhancements.  His attorney

8

negotiated a very favorable disposition, a fixed sentence of only 12 years for bank robbery, including the low term of two years for the robbery itself. Defendant also had other charges pending, which were disposed of in the proceedings, without increasing defendant's total prison term. Defendant only had to accept one strike conviction arising from all of the cases; the other offenses and enhancements charged in connection with the bank robbery were dismissed. If defendant had not agreed to the bargain, he would have faced much greater maximum exposure.

The evidence, as well as defendant's admission, fully supported the gang enhancement. Defendant did not dispute that he was a member of a gang. Although defendant now says he had no "co-partners" in the bank robbery, he told police differently during his interview. Defendant related that he and another person planned the robbery. Defendant met at the agreed-upon rendezvous point after leaving the bank. Defendant admitted dividing the proceeds of the robbery three ways; inferentially, these other persons were also gang members. There was also the evidence of the suspicious man inside the bank while defendant was robbing the teller. The man had no ostensible business with the bank, and he left by getting into a waiting van shortly before defendant left the bank. That defendant spent his portion of the money selfishly does not establish that the crime was not committed for the benefit of or to promote his gang; the evidence suggested otherwise, that defendant may well have committed the robbery as a source of income for himself and other members of the gang. That there was no definitive or sworn testimony to establish the precise relationship of the bank robbery to defendant's

gang is of no moment, because defendant knowingly and personally waived the right to have a preliminary hearing or a trial at which such evidence could have been presented (or rebutted). He also knowingly admitted the enhancement allegation.

Defendant's claim of confusion and insufficient time to consider the plea is belied by the record. Defendant specifically told the court that he had no questions for the court or counsel, that he had read and understood the plea form, and that he had not been promised anything else to induce him to plead guilty. He expressly admitted on the record that the bank robbery was committed for the benefit of, at the direction of, or in association with a criminal street gang, to promote, further or assist in criminal conduct by a gang member. There was no ambiguity, confusion or misunderstanding about exactly what defendant was admitting.

Defendant's claim that he should be awarded 20 percent credits, rather than 15 percent custody credits, against his prison term is unmeritorious as well. A person sentenced under the "Three Strikes" law may earn conduct credits against the sentence, limited to 20 percent (one-fifth) against the term of imprisonment. (Pen. Code, §§ 1170.12, subd. (a)(5), 667, subd. (c)(5).) However, Penal Code section 2933.1 provides: "(a) Notwithstanding any other law, any person who is convicted of a felony offense listed in . . . Section 667.5 shall accrue no more than 15 percent of worktime credit, as defined in Section 2933. [¶] (b) The 15-percent limitation provided in subdivision (a) shall apply whether the defendant is sentenced under Chapter 4.5 (commencing with Section 1170) of Title 7 of Part 2 or sentenced under some other law."

10

Because defendant's commitment offense was a violent felony within the scope of Penal Code section 2933.1, that provision preempted any other law concerning the credits defendant may earn. Penal Code section 2933.1 limits defendant's credits to a maximum of 15 percent against his prison term. (See *People v. Caceres* (1997) 52 Cal.App.4th 106, 112-113.)

Under the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the record and find no arguable issues.

<u>DISPOSITION</u>

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

RAMIREZ
P. J.

MILLER
J.

11