Filed 11/25/15   P. v. Becerra CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>TOMMY TOMAS BECERRA,<br><br>    Defendant and Appellant. | G051557<br><br>(Super. Ct. No. 13CF0513)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, James Edward Rogan, Judge.  Affirmed.

Melanie K. Dorian, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

We appointed counsel to represent Tommy Tomas Becerra on appeal. Counsel filed a brief that set forth the facts of the case. Counsel did not argue against her client but advised the court she found no issues to argue on his behalf. Becerra was given 30 days to file written argument on his own behalf. That time has passed, and Becerra did not file a brief.

Counsel filed a brief following the procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*). The court in *Wende* explained a *Wende* brief is one that sets forth a summary of proceedings and facts but raises no specific issues. Under these circumstances, the court must conduct an independent review of the entire record. When specific issues are raised by the appellant himself in a *Wende* proceeding, we must expressly address them in our opinion and explain why they fail. (*People v. Kelly* (2006) 40 Cal.4th 106, 110, 120, 124.) Becerra did not raise any issues himself.

Pursuant to *Anders v. California* (1967) 386 U.S. 738 (*Anders*), to assist the court with its independent review, counsel provided the court with information as to issues that might arguably support an appeal. Counsel raised two issues: (1) did substantial evidence support his convictions; and (2) did the trial court err in denying his motion to suppress evidence. We have reviewed the record in accordance with our obligations under *Wende* and *Anders*. We found no arguable issues on appeal. The judgment is affirmed.

FACTS

A week-long surveillance was conducted of a single family residence in Santa Ana, where a man named Ruben Becerra (Ruben) was suspected of selling heroin. Sergeant Patrick Rich led a team of Orange County Sheriff's deputies to execute a search warrant at the house. Rich noticed a heavy screen security door and surveillance cameras above the motion lights monitoring the exterior of the house.

Upon entry, Becerra met Rich at the door. Other occupants of the house were Ericka Herrera and Selena Trimble, who was pregnant. Herrera was in the

2

southwest bedroom, and Trimble was in the southeast bedroom.  An hour prior, Rich saw a man resembling Ruben enter the house, and his vehicle was parked in the driveway, but Ruben was not there at the time of the search.  Investigator Rene De La Rosa recalled Becerra did not have a shirt on.

The deputies brought everyone out to the living room and secured the residence.  About 20 minutes later, the deputies began to search the house.  De La Rosa was assigned to search the southwest bedroom where Becerra and Herrera were living.  De La Rosa observed a television monitor in the bedroom with four-camera views showing the driveway and the front of the house.  He first searched a dresser against the east wall of the bedroom.  On top of the dresser he found a candle with a hidden compartment.  In the compartment were two clear plastic bags containing heroin.  Later, the Orange County Crime Lab analyzed the larger bag, which tested positive for heroin and weighed 4.9 grams.  The content of the smaller bag, which weighed 2.73 grams, was not analyzed, because the lab visually determined it was similar to the larger one.

In the top right drawer of the dresser, De La Rosa found a metal spoon with a small torn piece of cotton ball soaked in heroin; cotton balls were used to filter out impurities when injecting heroin.  Also recovered were two used hypothermic syringes used for injecting heroin, a plastic cup with a brown liquid inside, "more likely just water mixed with heroin," and a digital scale with heroin residue on it.  On top of a nightstand, De La Rosa found a black zippered pouch that contained three metal spoons, three small knives, and two pairs of scissors.  All of these items contained heroin residue, and De La Rosa opined they were used as drug paraphernalia.

On top of a second dresser, De La Rosa found two digital scales containing heroin residue, three plastic grocery bags cut out in small portions typically used for packaging drugs, and 500 multicolored rubber bands too large to have been used for packaging.  In the top drawer, there were two bags containing 200 small Ziplock bags with a skull design, and a monthly planner with handwritten notes of dollar amounts and

3

names, believed to be pay-owe sheets. De La Rosa found a wallet containing Becerra's driver's license, a Chevron receipt showing Becerra's name, and $1,620 in cash.

De La Rosa also searched a closet inside the bedroom. In the closet he found an empty digital television converter box which contained a handwritten sheet with names and dollar amounts, also believed to be pay-owes, and $1,000 in cash. There was also an owner's manual, which Rich described as a tally sheet, indicating weights and amounts of drugs. Somewhere on a top shelf, possibly inside the converter box, there was a store receipt with Herrera's name on it. There was also a jacket in the closet, which had $500 in one of its pockets. Neither Rich nor De La Rosa recalled whether it was a man or a woman's jacket.

A total of three scales were found in the southwest bedroom, and additional scales were recovered from the southeast bedroom where Trimble and Ruben were staying. Also found in the southeast bedroom were 11.3 grams of heroin in one plastic bag, a second containing two grams, and a third with 6.4 grams of methamphetamine along with 50 baggies labeled with a skull. There was $680 in Trimble's wallet and another $200 in her purse.

In a hallway closet to the east of the main entry Deputy Tommy Montoya found a large Miami Dolphins cooler on the floor. When Montoya removed the lid, he noticed a zippered area, and inside, found a green zippered pouch. There were a semiautomatic unloaded handgun and two magazines wrapped in a bandana inside the green pouch. Montoya also searched what appeared to be the communal bathroom of the house, which was accessible only from the hallway. Underneath the sink, in a plastic cotton ball package, there were two glass pipes used for smoking methamphetamine.

Based on all the items found in the southwest bedroom, Rich opined the two bags of heroin inside the candle were possessed for sale. As a basis for this opinion, Rich testified the quantity of the heroin exceeded the amount a person would typically possess at one time for personal use. In forming his opinion, Rich also noted the

4

200 small baggies and pieces of grocery bags were unused packaging materials, and the heroin residue on the scale suggested the scale was being used to weigh and ultimately sell drugs. Also noteworthy was the fact rubber bands, similar to the ones found, were commonly used for bundling money obtained from the sale of narcotics. Rich testified the entries in the monthly planners and the sheet found in the converter box, which included dates, accounting of weight, initials and dollar amounts, indicated these were pay-owe sheets used exclusively by a person who was selling narcotics. The contents suggested the person who had made the entries was selling the drugs to a second person who would then sell them to individual users.

Rich also placed significance on the unusually large amounts of cash found in the room, and the small denominations mostly comprised of $20 bills, which were typically exchanged during drug transactions. He noted there were numerous missed calls and text messages from a "Lisa," letting Becerra know she was coming by, which led Rich to conclude she may have been a customer in urgent need of heroin.

Rich testified that although many homeowners maintained video surveillance systems in their homes for protection, these did not include live monitoring, which was common with drug sellers. Drug sellers used live monitoring as protection against potential robbers and to find out whether the house was being watched by the police. Rich believed it was "very telling" the system in Becerra's bedroom was live monitoring as he and his team approached the house.

Finally, Rich opined the drugs in the southeast bedroom were also possessed for sale. Rich found several text messages in Herrera's cell phone from individuals asking to purchase narcotics, including from a "Lisa" wanting to come to the house. Rich did not find it unusual for the occupants of the house to each conduct his or her own separate drug sales because he believed they were all heroin users and were selling narcotics to support their drug habit.

Following the search, Rich and Karr took Becerra into the northwest bedroom for an interview, where Rich advised Becerra of his rights pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Before the interview began, Becerra said he was concerned for Trimble, who was pregnant, and also said Herrera, who was his girlfriend, did not need to go to jail.

Rich told Becerra they found the heroin, scales, and baggies in his room, and Becerra said they belonged to him. Becerra denied knowledge of the pay-owe sheets and made no admission regarding selling drugs. Rich advised Becerra about the gun they found in the closet. Becerra initially denied knowledge of the gun, but later said all the items in the closet, including the cooler, belonged to him. Becerra said the gun belonged to him or he was holding it for another person, although he would not identify the person. When Rich asked him whether the gun would be clear of any criminal activity, Becerra did not answer and said the gun was not his. Rich testified it was common for individuals selling narcotics to also possess guns for protection against those who might want to break into their home and steal their drugs and money. Officers arrested Trimble and Herrera for possession of heroin for sale.

An information charged Becerra with possession for sale of a controlled substance, heroin (Health & Saf. Code, § 11351; count 1), and possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1), all further statutory references are to the Pen. Code, unless otherwise indicated; count 2). The information alleged other allegations, including special drug enhancements (Health & Saf. Code, §§ 11352.5, subd. (3)) based on five 1995 drug convictions (Health & Saf. Code, § 11352, subd. (a)); ineligibility for probation (§ 1203.07, subd. (a)(3)); a prior strike offense (§§ 667, subds. (d), (e)(1), 1170.12, subds. (b), (c)(1)); and two prior prison terms (§ 667.5, subd. (b)). Becerra pleaded not guilty and denied all allegations.

Prior to trial, the trial court heard and denied Becerra's section 1538.5 motion to suppress. Becerra subsequently filed a written request for self-representation. After the hearing, the court granted Becerra's request to represent himself and relieved his court-appointed attorney. A few months later, the court revoked Becerra's pro per status and reappointed counsel at Becerra's request. At trial, the parties stipulated Becerra had previously been convicted of a felony, and the court instructed the jury not to speculate about the nature of the prior conviction. Becerra did not call any witnesses at trial.

The jury convicted Becerra of counts 1 and 2. In a bifurcated trial, Becerra admitted and the court found true the prior conviction allegations. The court sentenced Becerra to the low term of two years on count 1, and a consecutive eight months on count 2 based on one-third of the mid-term of two years. The court imposed three additional years for the drug enhancement and struck the remaining enhancements in the interest of justice.

In another case, case No. 14CF1154, Becerra pleaded guilty to unlawful taking of a vehicle (Veh. Code, § 10851, subd. (a)), and several misdemeanor counts, and admitted a two-year enhancement allegation (§ 12022.1, subd. (b)). In that case, the court sentenced Becerra to a consecutive eight months based on one-third of the mid-term, plus two years for the enhancement, and concurrent county jail terms for the misdemeanors. The court awarded custody credits for 291 actual and 58 conduct days, totaling 349 days. In case No. 14CF1154, the court awarded custody credits for 340 days, including 284 actual and 56 conduct days. At Becerra's request, the court subsequently corrected his custody credits in the instant case to reflect 581 days (291 actual + 290 conduct), and in case No. 14CF1154, to 568 days (284 actual + 284 conduct). Becerra filed a timely notice of appeal.

DISCUSSION

A review of the record pursuant to *Wende*, *supra*, 25 Cal.3d 436, and *Anders, supra,* 386 U.S. 738, including the possible issues raised by appellate counsel, has disclosed no reasonably arguable appellate issue.

DISPOSITION

The judgment is affirmed.

O'LEARY, P. J.

WE CONCUR:

BEDSWORTH, J.

ARONSON, J.