Filed 4/16/21  P. v. Guzman CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E076123 |
| v. | (Super.Ct.No. FCH1100509) |
| RUDY ANTHONY GUZMAN, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Lisa M. Rogan, Judge.  Affirmed.

Rudy Anthony Guzman, in pro. per.; Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

**FACTUAL AND PROCEDURAL HISTORY**

A.    STATEMENT OF THE CASE

On October 25, 2011, a first amended felony complaint charged defendant and appellant Rudy Anthony Guzman with murder under Penal Code[1] section 187, subdivision (a) (count 1).  The complaint also alleged that defendant personally and intentionally discharged a firearm under section 12022.53, subdivision (d).  Additionally, the complaint alleged that defendant had a juvenile adjudication for a serious and violent felony under sections 1170.12, subdivisions (a) through (d), and 667, subdivisions (b) through (i).

On September 25, 2012, defendant waived arraignment on an amendment to the complaint wherein the People added a firearm-use enhancement under section 12022.5, subdivision (a), and two prison prior convictions under section 667.5, subdivision (b).  Pursuant to a plea agreement, defendant pled guilty to voluntary manslaughter under section 192, subdivision (a), a lesser offense on count 1.  Defendant also admitted the newly-added prison priors and the lesser firearm enhancement.  In exchange, defendant was to receive a stipulated term of 15 years, comprised of the low term of three years for manslaughter, 10 years for the firearm-use enhancement, and two years for the prison priors.  All of the remaining counts and allegations were to be dismissed.

---

[1]  All further statutory references are to the Penal Code unless otherwise specified.

2

At the sentencing hearing on October 24, 2012, the trial court sentenced defendant in accordance with the plea agreement and dismissed the remaining charges and allegations.

On January 10, 2019, defendant filed a petition for relief under section 1170.95. The People filed a motion to strike the petition. At the hearing on October 9, 2020, the trial court found that section 1170.95 does not apply to voluntary manslaughter.

On November 17, 2020, defendant filed a timely notice of appeal.

B.     STATEMENT OF FACTS

The parties agreed that the police report would serve as the factual basis for defendant's plea. The probation report summarized the police report:

Around 4:10 a.m. on October 23, 2011, officers responded to reports of a gunshot victim. When the officers arrived, they saw the victim lying in the middle of the street surrounded by five women. The victim was taking short gasping breaths and the victim's eyes were rolling to the back of his head. A puddle of blood was starting to form under his body. An officer saw a gunshot wound on the victim's head and attempted to question the victim about who shot him. The victim did not respond to the officer. When the ambulance arrived, it transported the victim to a helicopter, which flew the victim to Loma Linda Hospital. During the ride, the victim answered some questions but did not identify the suspect. The victim died in the operating room.

One of the women that had been standing by the victim was identified as the victim's girlfriend, Jessica. Jessica told the officers that she lived where the incident occurred. She was hosting a birthday party for a friend, Edlin. Edlin invited four men to

3

the party. Jessica identified them as "Cooper," Ruben, Mike, and "Tattoo." After a few hours, the four men became rude to one of Jessica's friends. The victim then asked the men to show some respect. After a brief verbal argument, the four men left the house. A few minutes later, the victim went outside to "smooth things over." Jessica did not want him to go because the four men were "crazy." Jessica also went outside, and stood in her front yard. She saw the victim standing in the street facing the four men but could not hear anything. She then saw Tattoo draw a handgun from his waistband and fire one shot at the victim. Tattoo then put the gun back in his waistband. The four men immediately scattered, and the victim fell to the ground. Jessica saw Tattoo get into the passenger's side of a truck; they fled the scene. Jessica provided a description of Tattoo and said she could identify him if she saw him again.

Another female at the location, Elise, showed officers photos on a cell phone. She identified a subject in the photo as the shooter, who was later identified as defendant. Elise also stated that after the shooting, she overheard the victim tell Jessica, "Babe, it was the guy with the tattoos." Elise did not witness the shooting.

An officer asked Edlin if she knew the subject in the photo with the tattoos. Edlin responded she did not. She also denied knowing the subject she identified as Cooper very well. She, however, had his phone number. She invited Cooper to the party, and he arrived with the three other men she did not know. Edlin did not witness the shooting and was reluctant to provide information regarding the four men.

At approximately 11:40 p.m., an officer conducted a traffic stop on a vehicle. The driver was identified as defendant and the passenger was identified as Ruben Herrera.

4

Both defendant and Herrera were taken into custody without incident. During an interview, defendant admitted that he arrived at the party and left the party with Herrera. Defendant, however, denied being at the party at the time of the shooting. Herrera admitted being at the party but stated he left the party by himself prior to the shooting. The officers had time-stamped photographs showing defendant was at the party at 3:49 a.m.

## DISCUSSION

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of the case, a summary of the facts, and potential arguable issues, and has requested this court to undertake a review of the entire record. Pursuant to *Anders*, counsel identified the following issue to assist the court in its review of the record for error: "Did the trial court err finding manslaughter is not covered by Penal Code section 1170.95?"

We offered defendant an opportunity to file a personal supplemental brief. On March 22, 2021, defendant filed a 15-page handwritten supplemental brief with attached exhibits showing progress defendant has made while in prison. In his brief, defendant essentially contends that (1) the evidence was insufficient to support his conviction; (2) his counsel rendered ineffective assistance of counsel (IAC) by encouraging him to take the plea offered by the People; and (3) the court erred in denying his petition.

First, we note that this is an appeal from the trial court's order denying defendant's section 1170.95 petition. Defendant, therefore, cannot challenge whether there was

5

sufficient evidence to support his guilty plea for voluntary manslaughter, or whether his counsel rendered IAC by encouraging defendant to plead guilty. As noted *ante*, defendant entered his plea on September 25, 2012; he is barred, almost 11 years later, from challenging his guilty plea.

Next, we address defendant's contention that the trial court erred in denying his section 1170.95 petition. The trial court, when denying defendant's petition, stated: "The Court has reviewed the petition filed by the defendant finding that the defendant accepted a plea offer for voluntary manslaughter, and that would make the defendant statutorily unfit for resentencing pursuant to section 1170.95." We agree with the trial court.

In *People v. Sanchez* (2020) 48 Cal.App.5th 914 (*Sanchez*), this court joined "the courts that have held that section 1170.95 does not apply to defendants convicted of voluntary manslaughter." (*Id.* at p. 916, citing *People v. Flores* (2020) 44 Cal.App.5th 985, 997; *People v. Turner* (2020) 45 Cal.App.5th 428, 438; *People v. Cervantes* (2020) 44 Cal.App.5th 884, 887.) We hereby adopt our decision in *Sanchez*.

"Senate Bill 1437 narrowed the scope of liability for first and second degree murder by altering the doctrines that had allowed convictions for those offenses in the absence of malice. Effective January 1, 2019, Senate Bill 1437 made that change by amending sections 188 and 189 to restrict the scope of first degree felony murder and to eliminate murder liability based on the natural and probable consequences doctrine." (*Sanchez*, *supra*, 48 Cal.App.5th at p. 917.) "The Legislature also added section 1170.95 to the Penal Code. That provision creates a procedure for offenders previously convicted

6

of felony murder or murder under a natural and probable consequences theory to obtain the benefits of these changes retrospectively." (*Ibid.*)

As to eligibility, section 1170.95 provides, in pertinent part: "(a) A person convicted of felony murder or murder under a natural and probable consequences theory may file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶] (1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder. [¶] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." Section 1170.95 contains no reference to voluntary manslaughter. "By its plain language, section 1170.95 thus makes resentencing relief available only to qualifying person convicted of murder." (*Sanchez, supra,* 48 Cal.App.5th at p. 918.)

Moreover, "[a]s the court noted in [*People v. Turner, supra,* 45 Cal.App.5th 428], '[t]he punishment for manslaughter is already less than that imposed for first or second degree murder, and the determinate sentencing ranges of 3, 6, or 11 years for voluntary manslaughter . . . permit a sentencing judge to make punishment commensurate with a defendant's culpability based on aggravating and mitigating factors.' [Citation.] Construing section 1170.95 to exclude those convicted of voluntary manslaughter by plea

7

agreement therefore does not 'produce absurdity by undermining the Legislature's goal to calibrate punishment to culpability.' [Citation.] [¶] For all of these reasons, we conclude that section 1170.95 relief is not available to those offenders who pled guilty to voluntary manslaughter." (*Sanchez*, *supra*, 48 Cal.App.5th at pp. 919-920, fn. omitted.) Therefore, the trial court properly denied defendant's section 1170.95 petition.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error. We are satisfied that defendant's attorney has fully complied with the responsibilities of counsel and no arguable issue exists. (*Id.* at p. 126; *Wende*, *supra*, 25 Cal.3rd at pp. 441-442.)

## DISPOSITION

The trial court's order denying defendant's petition for resentencing is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER_____
Acting P. J.

We concur:

SLOUGH_____
J.

RAPHAEL_____
J.

8