Filed 4/29/21  P. v. Murray CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>DUSTIN MURRAY,<br><br>        Defendant and Appellant. | A160644<br><br>(San Francisco City & County Super. Ct. No. 19008435, SCN231445) |

Defendant was charged in an information with first degree burglary and misdemeanor receiving stolen property.  A jury convicted him of receiving stolen property.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 30, 2019, Victor L. and his girlfriend, J.L. were asleep in their apartment, when Victor heard a "clicking noise, just a little shuffle."  He "kind of closed [his] eyes" but woke up "to a noise at the foot of the bed."  He initially thought the person standing at the foot of the bed was his girlfriend. However, when Victor "reached over," and realized J.L. was still in bed, he jumped out of the bed.  There was a man standing at the door looking at him repeating, "it's okay bro."  The bedroom is actually a big closet that fits a queen-size bed.  Victor "navigate[d] the door to get out."  Though Victor "lunged out," he was unable to grab the man, only making "contact" with him as the man "slid out the door."  Victor pursued the intruder down the hallway

and four flights of stairs to the front door of the building where he discontinued the pursuit.

Victor returned upstairs to find J.L. standing at the door with a phone in her hand. He instructed her to call 911. As they were talking to 911, Victor heard the same voice as he heard at the end of the bed coming from Larch Street (referred to during trial testimony as "Larch Alley" or the "Larch alleyway"), which runs parallel to the long edge of their building.

After calling 911, Victor L. and J.L. discovered their kitchen window leading to the fire escape was open; it was closed when they went to bed. J.L.'s laptop and charging cord were missing.

The Eye Institute building is located next to the victims' apartment building. A May 30, 2019 DVD from the Eye Institute's surveillance system, taken before the burglary, depicted an individual searching through a dumpster located in the Larch Alley. The figure then climbed over the fence separating the Eye Institute property from the apartment building and climbed onto the fire escape to the next landing before disappearing from the camera's view.

San Francisco Police Officer Michael Petuya responded to Larch Street and Van Ness Avenue regarding an individual who had broken into an apartment through a fire escape window and had taken "a bag and a laptop from the owners." Because he was told the individual had fled the building to the Larch alleyway, he proceeded to the alley to look for the possible suspect. As soon as he arrived "on scene," and exited his patrol vehicle, he observed defendant leaving the area of 725 Van Ness Avenue onto Larch. Defendant walked across the street in front of a smaller sedan and threw what appeared to be a black bag underneath the sedan. Petuya immediately detained defendant. Petuya then went to the car under which defendant had thrown

2

the bag and, using his baton, retrieved the bag. Inside the bag, he saw a laptop and several charging cables. The officer showed the victims "the bag," which they identified as theirs. According to Victor L., a few minutes after the police arrived at their apartment, the officers returned the laptop and charger to J.L.

Following defendant's detention, Office Maxim Mackenzie conducted a "cold show," first with Victor L. and then with J.L. As Victor viewed defendant, he could hear defendant speaking "[t]he whole time." He was "a hundred percent sure it was him," the most distinctive characteristics being defendant's voice and height. Unlike Victor, when J.L. was first shown defendant, she was unable to identify him. The police, however, had her come back a second time. They put a hood over defendant and turned him around facing away from her. J.L. stated that was "the image of the person [she] saw in [her] house" as she was "sitting up in [her] bed."

An information was filed charging defendant with first degree burglary (Pen. Code, § 459; count I) and misdemeanor receiving stolen property (Pen. Code, § 496, subd. (a); count II). It was alleged defendant suffered two prior convictions for first degree burglary and one prior conviction for felony receiving stolen property.

After defendant's counsel expressed doubt as to defendant's competency, criminal proceedings were suspended. Subsequently, the matter was submitted on the filed medical report. The court found defendant was mentally competent and reinstated criminal proceedings.

Following a jury trial, defendant was found guilty of count II, misdemeanor receiving stolen property. As to count I, residential burglary, the court declared a mistrial because the jury was unable to reach a verdict.

The court sentenced defendant to serve one year in county jail with credit for time served of 360 days.  Fines and fees were stayed.

## DISCUSSION

Defendant's counsel has filed a brief setting forth the facts of the case but advising the court under the authority of *People v. Wende* (1979) 25 Cal.3d 436, no issues were found to argue on defendant's behalf.  Counsel has also apprised us in his declaration that he has notified defendant he can file a supplemental brief with this court.  No supplemental brief has been received.

Pursuant to *People v. Kelly* (2006) 40 Cal.4th 106, we have independently examined the record to see if any arguable issue is present.  We have found none.  Defendant was ably represented by counsel throughout the proceedings.  The trial court made a detailed and well-reasoned record.  We find no sentencing issues.

In sum, we agree with defendant's counsel that no meritorious issues are present undermining defendant's conviction.

## DISPOSITION

Accordingly, the judgment is affirmed.

MARGULIES, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A160644
*People v. Murray*