Filed 6/12/26  P. v. Palacio CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E086963 |
| v. | (Super.Ct.No. FERI2500530) |
| JUAN ENRIQUE RUBIO PALACIO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Brian S. McCarville, Judge.  Affirmed.

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

## INTRODUCTION

Defendant and appellant Juan Enrique Rubio Palacio appeals the judgment, after a jury convicted him of inflicting corporal injury on a spouse (Pen. Code[1], § 273.5, subd. (a)) and personally inflicting great bodily injury (GBI) during the commission of the offense (§ 12022.7, subd. (e)).  We affirm.

## BACKGROUND

Defendant was charged by first amended information with inflicting corporal injury on a spouse (§ 273.5, subd. (a), count 1) and personally inflicting GBI (§ 12022.7, subd. (e)) during the commission of the offense.  The information also alleged the aggravating factor that his prior convictions were numerous and of increasing seriousness.  (Cal. Rules of Court, rule 4.421, subd. (b)(2).)

*Current Incident–January 20, 2025*

A jury trial was held, and defendant's fiancé, V.V. (the victim), testified under compulsion of a subpoena.  She testified that, around midnight on January 20, 2025, she and defendant were driving to the Airbnb they had been renting (home), when a black car "got in front of [them]" and stopped.  The victim said she was cussing, and she jumped out of the car since the occupants of the black car were cussing at her and wanted to fight.  She fought two girls for a couple minutes, and then the girls left.  The victim got back in the car and told defendant to follow them, since she still wanted to fight.  Defendant and the victim started

---

[1] All further statutory references will be to the Penal Code unless otherwise indicated.

2

arguing, and defendant said the victim was acting like a child. They drove home, yelling at each other. When they arrived home, they stayed in the car arguing, and defendant told her to leave, but she did not want to. The victim testified that one of her friends came outside and told them to stop yelling. The victim got out of the car but was trying to hold on to defendant. He kept saying that she was childish and that he "can't do this no more." The victim cried and screamed. She could not recall what happened next, but she remembered defendant said he was not going to leave her anymore, and he was going to take her to get a horchata to calm down. They drove to get a horchata at a Circle K. However, on the way there, the police pulled them over and asked if the victim was okay. After a while, the police let them go.

The victim further testified that she had "a really bad black eye" from fighting with the two girls. At 4:00 a.m. or 5:00 a.m. that morning, her head and eye were hurting from the fight, so she and defendant went to Kaiser for her to get treated.

At trial, the prosecution called C.G. to testify and he said that, at around midnight on January 20, 2025, he arrived at his former residence and noticed a white car slowing down, with the back door on the driver's side open. The car stopped about two houses down from him. C.G. saw a woman get out of the car through the back door. Then he saw the male driver get out of the car, push the female against the door, and push her back inside the car. They were arguing and the female was trying to get out of the car; however, the male pushed her in the

3

back seat, slammed the door, and then drove off toward the Circle K. The female screamed, was crying, and said something about the male going to jail. C.G. called 911 after he heard the female scream and saw her get pushed into the car. C.G. had a surveillance video (Google Nest camera), taken from his former residence, which depicted the incident. The video was played for the jury.

Officer Dominic Holguin testified at trial that he responded to the 911 call. He approached the subject car, and defendant and the victim were in it. Officer Holguin asked them both to step out of the car and then Officer Jonathan Hamilton spoke with the victim and defendant.

Officer Hamilton testified at trial that he separated defendant and the victim and asked what happened. They both said there was a road rage incident that turned physical but gave minimal information about it. Defendant told Officer Hamilton he got into a physical altercation with someone else and said something like "it was a black dude." Officer Hamilton noticed some blood on defendant's sweater and observed that defendant had no physical injuries. Defendant said it was his girlfriend's blood. Officer Hamilton testified the victim gave the same storyline about a road rage incident, "just [with] different details." She said two black guys and two black girls jumped out of the car, and she (the victim) got beat up.

Officer Hamilton further testified that he observed the victim had "cleaned up a nose injury" or had a mouth injury, since there was dry blood around her lips. The victim "looked like she was the victim of the whole situation," since she was

4

the one who suffered injuries. The officer said he asked if they wanted to press charges against the suspects, and they both said no.

The victim additionally testified that, on February 7, 2025, defendant drove her to the police station. They were arguing, and he said he was going to leave her. The victim threatened to tell the police that he hit her, and defendant said he would rather be in jail than spend the rest of his life with her. The victim recognized Officer Holguin from January 20, 2025, and spoke with him at the station.

Officer Holguin testified at trial that he talked with the victim, and she disclosed that there had been prior domestic violence incidents. She provided him with photographs of her injuries from January 20, 2025, and he testified that her right eye still appeared to be irritated. A videotape of the officer's interview with the victim was played for the jurors. During the interview, the victim told Officer Holguin that she told defendant she was going to break up with him, and defendant grabbed her to stop her from exiting the car. She started screaming and was able to "wiggle [her] way out of the car." However, defendant socked her in the eye and forced her back into the car. The victim told Officer Holguin she actively resisted, and defendant forced her into the car. The victim said she was trying to get out through the back seat.

The victim told Officer Holguin she was mad at defendant and told him, "I hope the cops come cuz [sic] this time I'm not gonna save you. Like I'm gonna tell them the truth." However, as soon as she saw the police, she did not do so.

5

The victim disclosed that when she saw the police coming after them, she told defendant to tell the police there was a road rage incident, because she did not want him to get in trouble and did not want him telling everyone she was a "rat".

The victim further told Officer Holguin her head hurt so bad and the bleeding would not stop, so she went to Kaiser on the night of the incident. Kaiser did a CT scan and told her she had two fractures.

After the victim made her statement, and in view of the photographs, Officer Holguin determined there was probable cause to suspect domestic violence. So, he handcuffed defendant and secured him in a holding cell.

*Prior Domestic Violence Incident in October 2018 with J.M.*

At trial, the prosecution called witness J.M. to testify. She and defendant were together from 2012 to 2018 and had two children together. She testified that, on October 26, 2018, she was driving defendant to his new job and missed the exit. Defendant got mad, grabbed the steering wheel, and tried to swerve and crash the car. She pulled the car over and told him she was not going to take him to work if he was going to crash the car. Defendant took his seatbelt off, reached over, and grabbed her neck with both of his hands and applied pressure. J.M. coughed a bit and told him to stop and get out of her car. After defendant backed off, he put his fist to J.M.'s face, threatened to hit her, and kept saying, "Say I won't do it." Defendant told her to take off, so she did. Defendant grabbed the steering wheel again and tried to swerve the car. They eventually reached his job site. J.M. said she reported the incident to the police the next day.

6

*Domestic Violence Expert's Testimony About Battered Women's Syndrome*[2]

At trial, the prosecution also called a domestic violence expert to testify. She said she did not know anything about the facts of this case. She testified about strangulation in domestic violence cases and about Battered Women's Syndrome, based on her training and experience.

*Verdict and Sentence*

A jury found defendant guilty as charged of inflicting corporal injury on a spouse (§ 273.5, subd. (a), count 1) and the GBI enhancement (§ 12022.7, subd. (e)). At a bifurcated hearing, the court found true the aggravating factor that defendant's prior convictions were numerous and of increasing seriousness. However, it did not find that the aggravating factors outweighed the mitigating factors. Thus, the court sentenced defendant to the middle term of three years on count one, plus a consecutive four years on the GBI enhancement, for a total of seven years in state prison.

## DISCUSSION

Defendant appealed and, upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case and a few potential arguable issues: (1) whether the trial

---

[2] Although historically called "battered woman syndrome," this syndrome is now referred to as "intimate partner battering syndrome." (See, *People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1399; see also Evid. Code § 1107, subd. (f).)

court erred by admitting evidence of the prior domestic violence incident involving J.M. in 2018; (2) whether the court erred by admitting the domestic violence expert's testimony about Battered Women's Syndrome; and (3) whether the court abused its discretion in imposing, rather than staying, the GBI enhancement. Counsel has also requested this court to undertake a review of the entire record.

We offered defendant an opportunity to file a personal supplemental brief, which he has not done.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have conducted an independent review of the record and find no arguable issues.

## DISPOSITION

The judgment is affirmed.

FIELDS             
J.


We concur:

McKINSTER             
                Acting P. J.
MENETREZ             
                J.

8